**UNITED STATES of America,
Plaintiff-Appellee,
v.
Thomas GEORGE, Defendant-Appellant.
No. 71–1067.**

United States Court of Appeals,
Sixth Circuit.
June 14, 1971.

---

Arthur J. Koscinski, Detroit, Mich., for defendant-appellant.

Shirley Baccus-Lobel, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee; Will Wilson, Asst. Atty. Gen., Sidney M. Glazer, Shirley Baccus-Lobel, Attys., U. S. Dept. of Justice, Washington, D. C., on brief; James H. Brickley, U. S. Atty., Detroit, Mich., Jack O'Donnell, Atty., U. S. Dept. of Justice, Detroit, Mich., of counsel.

Before PHILLIPS, Chief Judge, WEICK and PECK, Circuit Judges.

WEICK, Circuit Judge.

George has appealed from an order of the District Court adjudging him to be in civil contempt for refusing to answer questions propounded to him before a federal grand jury after he had been granted immunity. He was committed to the custody of the Attorney General until he answered the questions before the grand jury, or until the term of the grand jury expires on March 28, 1972. Because of his incarceration, we advanced this appeal for oral argument.

On May 28, 1970, George was indicted, along with sixty-five others, on a charge of conspiring to transmit gambling information by the use of interstate facilities, in violation of 18 U.S.C. §§ 1952 and 371. On September 28, 1970, a federal grand jury commenced an investiga-

tion of alleged violations of 18 U.S.C. §§ 1952 and 371. On this same day George appeared before the grand jury, pursuant to subpoena. Invoking the Fifth Amendment to the Constitution, he refused to answer any questions. On September 29, 1970, the United States Attorney applied to the District Court for an order of immunity for George, pursuant to 18 U.S.C. § 2514,[1] which was granted.

George then filed a complaint in the District Court, seeking to enjoin the Department of Justice from interrogating him before the grand jury. A hearing was held on November 10, 1970, where he advanced four reasons as justification for his refusal to testify despite the grant of immunity: (1) that he might incriminate himself under state law; (2) that he and his wife filed joint income tax returns which were being audited by the Internal Revenue Service, and therefore his testimony could incriminate his wife; (3) that he was entitled to the presence of his attorney inside the grand jury room because of the pending indictment against him; and (4) that the grand jury was being used improperly to discover evidence against him for use in the pending indictment.

The District Court, after an *in camera* inspection of an affidavit by the Government regarding the purpose of the investigation of the grand jury, found the grand jury's investigation to be a "bona fide proceeding relating to new matters," and denied George's request for an injunction.

On December 2, 1970, George again appeared before the grand jury. The Government's attorney ascertained that George was aware of his rights and duties before the grand jury and that he knew that he was entitled to seek his attorney's advice (outside the grand jury room) after each and every question. He was then asked the following questions:

"1. What is your address, Mr. George?

2. Are you presently employed anywhere, Mr. George?

3. Do you live in Michigan?

4. Mr. George, are you going to refuse to answer any further questions that I may put to you?

5. Mr. George, have you ever been involved in any way in an illegal numbers gambling operation in the Detroit area?

6. Mr. George, have you every accepted any numbers bets over the telephone in the Detroit area?

7. Mr. George, can you identify any of the people who you were working with or for in an illegal numbers gambling operation?

8. Mr. George, are you going to continue to refuse to answer any further questions that I ask you?" (Tr. 8–19)

1. § 2514. Immunity of witnesses
Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section.

George refused to answer each and every question, basing his refusal to answer on the following reasons which he read:

"My answer may tend to incriminate me, number one.

"Number two, by testifying without her consent, I am compelled to become a witness against my wife, Mary Christine George, as to matters including but not limited to the Internal Revenue Code.

"Number three, I am presently under indictment in this Court for the alleged commission of the offense of conspiracy to use interstate facilities for the transmission of gaming information and by being compelled to testify before the Grand Jury without my attorney being present, I am deprived of the effective assistance of counsel while under indictment.

"Number four, this Grand Jury is being used for the purpose of discovery or preserving testimony for use in a criminal trial under an existing indictment, and not for the additional purpose in connection with general inquisitorial powers of the Grand Jury."

George was brought before the District Court the same day, where he reiterated his reasons for not answering the questions. The District Court, after giving George time to reconsider, found him to be in civil contempt, pursuant to 28 U.S.C. § 1826.[2]

On appeal George raises the same four grounds as justifying his refusal to answer, and asks this Court to reverse the judgment of contempt and to direct the District Court to quash the subpoena requiring him to appear before the grand jury, or alternatively, to require the Government to establish that the interrogation of him would not result in a violation of the marital privilege.

We are not persuaded by his reasons for refusing to answer, and therefore we affirm the District Court's order of contempt.

George's most serious contention is that his testimony before the grand jury forces him to be a witness against his wife, thereby violating the marital privilege. The basic ground for this contention is that he and his wife filed joint income tax returns, and that his testimony might possibly indicate discrepancies between their reported and actual income, thereby conceivably exposing his wife to civil and criminal penalties. He supports this contention by affidavits to the effect that the Internal Revenue Service, in August or September, 1970, commenced an audit of their joint returns.

The aspect of the marital privilege relevant here is the privilege of one spouse not to testify against the other spouse (the privilege for anti-marital facts). Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). This rule, while generally seen in the context of a criminal trial, is also applicable in grand jury proceedings. Nanfito v. United States, 20 F.2d 376, 378 (8th Cir. 1927). We do not think, however, based on the facts of his situation, that George could properly rely on the privilege.

Rule 26, Fed.R.Crim.P. reads in part:

"The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

The privilege must be interpreted in the "light of reason and experience." Lutwak v. United States, 344 U.S. 604, 613–615, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

In Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 281, 78 L.Ed. 617 (1934),

---

2. We note that in the District Court's Order and in the briefs this section is mis-cited as 18 U.S.C. § 1826, and we assume that all parties involved were properly relying on 28 U.S.C. § 1826.

Mr. Justice Stone, who delivered the opinion of the Court, speaking of the marital privilege, said:

"The privilege suppresses relevant testimony, and should be allowed only when it is plain that marital confidence cannot otherwise reasonably be preserved."

The eight questions propounded to George, which he refused to answer, did not relate to his wife nor to any communication with her. They related solely to George and his gambling activities, and did not involve his wife in any way. George's wife was not being investigated by the grand jury.

If we were to accept George's argument, then any married man who had filed a joint income tax return with his wife, by merely invoking the marital privilege could avoid being compelled to answer questions in a grand jury investigation where the wife was not involved, and wherein he had been granted immunity. Reason and experience dictate that the investigatory function of the grand jury cannot be so easily frustrated.

We are convinced that the Government was in no way using George as a witness against his wife. The grand jury investigation was totally unconcerned with George's joint income tax returns. Even if George should testify and give inculpatory evidence pertaining to the joint returns, his wife at the proper stage of her improbable prosecution could object to the introduction of any statement made by her husband on the ground of marital privilege.

George's second contention is that the grant of immunity pursuant to 18 U.S.C. § 2514 did not provide immunity from state prosecution, and that if it did Congress did not have constitutional power, to grant such broad immunity. Upon oral argument, the fallaciousness of this assertion was conceded. Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L. Ed.2d 249 (1960); Carter v. United States, 417 F.2d 384 (9th Cir. 1969), cert. denied, 399 U.S. 935, 90 S.Ct. 2253,

26 L.Ed.2d 807; United States v. Coplon, 339 F.2d 192 (6th Cir. 1964). *See* Murphy v. Waterfront Comm'n. of N. Y. Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

George also challenges the scope and purpose of the grand jury investigation, claiming that facts disclosed to the grand jury would be preserved and used in his trial under the pending indictment. The District Court considered this, and examined *in camera* the Government's affidavit relating to the scope and purpose of the grand jury investigation. The District Court confirmed that the grand jury was concerned with new matters, rather than with uncovering facts relating to George's pending indictment. George has shown no reason whatsoever, other than his own suspicion, to cause us to disturb this ruling.

The investigatory function of the grand jury is broad and is not to be easily thwarted or limited by witnesses. Blair v. United States, 250 U.S. 273, 281–282, 39 S.Ct. 468, 63 L.Ed. 979 (1918); Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652 (1905). So long as it is not the sole or dominant purpose of the grand jury to discover facts relating to his pending indictment, the Court may not interfere with the grand jury's investigation. In re Grand Jury Investigation, 32 F.R.D. 175 (S.D. N.Y.1963), appeal dismissed, 318 F.2d 533 (2d Cir. 1963), petition for cert. dismissed, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963); United States v. Pack, 150 F.Supp. 262 (D.Del.1957).

George's last contention is that he is entitled to the presence of his attorney inside the grand jury room. He maintains that the Sixth Amendment requires this because of his dual status as a defendant under a pending indictment and as a witness in a grand jury proceeding inquiring into matters similar to the subject matter of his indictment.

He has not shown a compelling reason to depart from the general rule that a witness appearing before a grand jury has no right to the presence of his attor-

ney. Gollaher v. United States, 419 F.2d 520 (9th Cir. 1969); United States v. Levinson, 405 F.2d 971 (6th Cir. 1968). His attorney was available to him at all times outside the grand jury room, and he had the right to consult with his attorney after every question asked of him. His alternate status as a defendant in a pending indictment does not militate for the presence of counsel. In fact, as the Government states in its brief, under the broad grant of immunity he will be removed as a defendant under the pending indictment if he testifies to matters which are the subject of his indictment.

Affirmed.