**In re GRAND JURY PROCEEDINGS.**

**In re Jacqueline SCHOFIELD, Witness, Appellant.**

No. 73–1520.

United States Court of Appeals, Third Circuit.

Argued July 2, 1973.

Decided Sept. 11, 1973.

Joseph A. Torregrossa, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from an order adjudging the appellant Schofield in civil contempt and committing her to the custody of the United States Marshal until such time as she purges herself by furnishing handwriting exemplars and by allowing her fingerprints and photograph to be taken by the Government. *See* 28 U.S.C. § 1826.

On April 5, 1973 Mrs. Schofield was served with a subpoena commanding her to appear at 4042 United States Courthouse, 9th and Market Streets, Philadelphia, Pa. for the purpose of testifying in a grand jury investigation. As appears on its face, the subpoena, on a standard printed Cr. Form No. 20, was issued by the Office of the Clerk, Eastern District of Pennsylvania, signed by a deputy clerk. As provided in Fed.R. Crim.P. 17(a), it was delivered in blank to the office of the United States Attorney, who filled in the blanks before it was served. The return of service shows that it was served by an F.B.I. agent. *See* 18 U.S.C. § 3052. The subpoena is captioned

"United States of America

v.

Grand Jury Investigation."

It discloses that it was issued on the application of the United States. It commands Mrs. Schofield to appear at the time and place designated "to testify in the above-entitled case." It contains no other information about the nature or purpose of the proceeding.

Mrs. Schofield appeared at the designated time and place. She was not asked to testify, but was directed by the United States Attorney (1) to submit handwriting exemplars, and (2) to allow her fingerprints and photograph to be taken. She requested an opportunity to confer with counsel and after so conferring on April 13, 1973 she refused to comply with the same requests made before the grand jury.

On April 19, 1973 the United States Attorney made a motion in the district court requesting that it order Mrs. Schofield "to submit and furnish, pursuant to any reasonable requests, examples of her handwriting and/or handprinting; fingerprints; and allow her photograph to be taken." In support of this application the Government represented:

"1. That JACQUELINE SCHOFIELD was called by the United States on April 13, 1973 to provide handwriting examples, fingerprints and her photograph to the Federal Grand Jury.

2. That the said JACQUELINE SCHOFIELD did appear before the said Grand Jury and did refuse to comply with the said request.

3. That the said JACQUELINE SCHOFIELD had no right or privilege, under either the 4th or 5th amendment of the United States Constitution to refuse to comply with said requests."

No other information, aside from legal argument, was furnished to the court in support of the motion. On April 19,

1973, without making any findings of any kind, the district court entered an order

> "that the defendant, Jacqueline Schofield, shall within ten days of the date of this Order present herself at the office of the Federal Bureau of Investigation, . . . and shall submit and furnish, pursuant to any reasonable requests, samples of her handwriting and/or handprinting; fingerprints; and shall allow her photograph to be taken . . . ."

The order permitted counsel to be present during her processing by the F.B.I. Mrs. Schofield did not comply with the order, and the United States Attorney obtained from the district court an order directing her to show cause why she should not be adjudged in civil contempt. In support of the order to show cause the United States Attorney showed only the facts set forth above. On the return day the district court determined that Mrs. Schofield had violated the order of April 19, 1973. Without making any other findings the court adjudged her in civil contempt and directed her confinement until she purged herself by submitting to the order. This appeal followed.

At all times during the proceedings in the district court Mrs. Schofield urged that before she be required to comply with the Government's requests (1) the Government state the purpose and necessity for requesting of Mrs. Schofield handwriting exemplars, fingerprints and photographs, and (2) that if the Government has in its possession documents allegedly signed by her, she be permitted to examine them. At all times during the proceedings below, and on this appeal, the Government has taken the position that it need disclose, either to the court or to the witness, no more than appears on the face of the grand jury subpoena.

Fed.R.Crim.P. 17(g) provides:

> "CONTEMPT. Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued . . . ."

The rule makes no distinction between civil and criminal contempts. Thus a recalcitrant witness presumably could be charged with a criminal contempt pursuant to Fed.R.Crim.P. 42(b). Moreover, Rule 17(g) on its face appears to make a subpoena self executing. Title III of the Organized Crime Control Act of 1970, P.L. 91-452, 28 U.S.C. § 1826(a), however, provides:

> "Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement . . . until such time as the witness is willing to give such testimony or provide such information."

House Report (Judiciary Committee) No. 91-1549, Sept. 30, 1970 says:

> "Title III is intended to codify present civil contempt practice with respect to recalcitrant witnesses in Federal grand jury and court proceedings." 2 U.S.Code Cong. & Ad.News, 91st Cong., 2d Sess. 4008 (1970).

Thus, for a civil contempt the two-step procedure of a subpoena followed by a court order is required. A subpoena is not, for civil contempt purposes, self executing. Moreover, the witness may be held in contempt only when his refusal is "without just cause." This appeal, then, requires a determination of the procedural steps which must be followed and the factual showing which must be made before a district court may adjudge a witness in civil contempt pursuant to 28 U.S.C. § 1826(a) and Fed.R.Crim.P. 17(g).

The Government, citing United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L. Ed.2d 67 (1973), and United States v.

Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed. 2d 99 (1973), contends that the district court should not make, or permit the witness to make, any inquiry, or require the Government to make any showing, beyond the facts set forth above. The district court apparently agreed.[1] That holding gives much too broad a compass to the holdings in *Dionisio* and *Mara*. Those cases did not involve the district court's supervisory power over the proper use of its process in a grand jury proceeding, the supervisory power of this court over the manner in which the district court supervises the proper use of its process, or the substantive and procedural law of civil contempt.

In *Dionisio* each grand jury witness was advised that he was a potential defendant in a criminal prosecution. Each was asked to examine a transcript of a lawfully intercepted wire conversation and to read the transcript into a recording device. Dionisio refused to do so, asserting that such a procedure violated his rights under the fourth and fifth amendments. The Government's petition for enforcement established that the voice exemplars were essential and necessary to the grand jury investigation and that they would be used solely as a standard of comparison in order to determine whether or not the witness was the person whose voice was intercepted. The Seventh Circuit, relying on Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), held that before a grand jury subpoena could issue for such a purpose there must be preliminary showing in open court of probable cause for its issuance. In re Dionisio, 442 F.2d 276 (7th Cir. 1971). *Compare* the above *with* United States v. Doe, 457 F.2d 895 (2d Cir. 1972). In *Mara* the Government sought handwriting exemplars. Its enforcement petition, presented to the court *ex parte*, and supported by an affidavit of an F.B.I. agent setting forth the basis for seeking the exemplars, established that the handwriting exemplars were essential and necessary

to the grand jury investigation and would be used solely to determine whether Mara was the author of certain writings. The Seventh Circuit reversed. Relying on its *Dionisio* holding it held that an *ex parte* proceeding was inadequate[2] and that in addition to the need for comparison the Government must establish that exemplars were unavailable from another source. In re September 1971 Grand Jury (Richard J. Mara), 454 F.2d 580 (7th Cir. 1971). In both cases the Supreme Court reversed. The holding in *Dionisio* is clear:

> "Since the Court of Appeals found an unreasonable search and seizure where none existed, and imposed a preliminary showing of reasonableness where none was required, its judgment is reversed and this case is remanded to that Court for further proceedings consistent with this opinion." 410 U. S. at 18, 93 S.Ct. at 773.

Its holding in *Mara* reiterates that in *Dionisio*. Both hold that the fourth amendment does not require any preliminary showing for the issuance of a grand jury subpoena, either to compel testimony, or to compel production of voice or handwriting exemplars. Neither, however, involves any question as to the propriety of the grand jury's investigation, the legitimacy of the purpose for issuing the subpoena, or any nonconstitutional objection to its enforcement. Indeed Justice Stewart's opinion for the Court in *Dionisio* quite carefully circumscribes its holding by explicitly reiterating the power of the district courts to control the use of grand jury subpoenas referred to in Justice Powell's concurring opinion in Branzburg v. Hayes, 408 U.S. 665, 709–710, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The issues raised by this appeal were not presented to or passed upon by the Supreme Court in *Dionisio* and *Mara*.

In considering those issues it is well to start with some fundamental propositions. First, although federal

---

1. No opinion was filed by the district court.

2. *Compare* Fed.R.Crim.P. 41(c).

grand juries are called into existence by order of the district court, Fed.R.Crim. P. 6(a); 18 U.S.C. § 3331, they are "basically . . . a law enforcement agency." United States v. Cleary, 265 F.2d 459, 461 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). They are for all practical purposes an investigative and prosecutorial arm of the executive branch of government. *See* 8 J. Moore, Federal Practice ¶ 6.02[1], [6] (2d ed. Cipes ed. 1972). Second, although like all federal court subpoenas grand jury subpoenas are issued in the name of the district court over the signature of the clerk, they are issued pro forma and in blank to anyone requesting them. Fed.R.Crim.P. 17(a). The court exercises no prior control whatsoever upon their use. Third, although grand jury subpoenas are occasionally discussed as if they were the instrumentalities of the grand jury, they are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch. Grand jury subpoenas then, when they are brought before the federal courts for enforcement, for all practical purposes are exactly analogous to subpoenas issued by a federal administrative agency on the authority of a statute,[3] without any prior judicial control. In ICC v. Brimson, 154 U.S. 447, 485, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894), the Supreme Court stated that an administrative agency could not self enforce its subpoenas by fine or imprisonment, thereby insulating them from judicial review, but must seek a judicial enforcement order. Penfield Co. v. SEC, 330 U.S. 585, 67 S.Ct. 918, 91 L. Ed. 1117 (1947), recognizes that civil contempt is the appropriate means for compelling obedience to such an enforcement order. In Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 216, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the Court indicated that an administrative

subpoena and a grand jury subpoena performed essentially the same function, and stated:

"The result therefore sustains the Administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited . . . by . . . forecasts of the probable result of the investigation . . .' 282; cf. Hale v. Henkel, 201 U.S. 43. Nor is the judicial function either abused or abased, as has been suggsted, by leaving to it the determination of the important questions which the Administrator's position concedes the courts may decide.[57]

[57] The issues of authority to conduct the investigation, relevancy of the materials sought, and breadth of the demand are neither minor nor ministerial matters. . . ."

327 U.S. 186, 216–217, 66 S.Ct. 494–509 (footnotes 55–56 omitted).

The enforcement mechanism of 28 U.S. C. § 1826(a) is the same as that for the typical administrative subpoena. There is no indication that Congress intended the role of the court to be different in one case from the other. And the federal courts have never lent their enforcement machinery to an executive branch investigative body in the manner of a rubber stamp. Since the *Brimson* case it has been clear that in passing on the application for enforcement of a subpoena the court acts *judicially* in a case or controversy. *See* 154 U.S. at 489, 14 S. Ct. 1125. It is true that orders enforcing administrative subpoenas are considered final and appealable, ICC v. Brimson, *supra*, whereas a grand jury witness must be adjudged in contempt to

3. *See, e.g.*, 15 U.S.C. § 50 (Federal Trade Commission); 15 U.S.C. § 78ff (Securities & Exchange Commission); 26 U.S.C. § 7602

(Internal Revenue Service); 49 U.S.C. § 20 ¶7 (Interstate Commerce Commission).

obtain an appealable order. *E.g.*, Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). But Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), makes clear that a court's determination under 28 U.S.C. § 1826(a) of the existence or nonexistence of just cause for refusing to obey a subpoena entails the same full judicial consideration as in the administrative subpoena cases. Indeed *Gelbard* holds that because a grand jury witness does not have an opportunity, prior to his appearance, to file appropriate motions addressed to his subpoena, 28 U.S.C. § 1826(a) must be construed as affording him the opportunity of presenting all defenses properly available to him, 408 U.S. at 59–60, 92 S.Ct. 2357.

■ Among the defenses which may be presented in resisting a subpoena are the obvious constitutional defenses of unreasonable search and seizure, *e.g.*, Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *cf.* Gelbard v. United States, *supra*, and self incrimination, *e.g.*, Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). But many nonconstitutional defenses also are available, including undue breadth, *e.g.*, Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500 (1928), improper inclusion of irrelevant information, *e.g.*, McGarry v. S.E.C., 147 F.2d 389 (10th Cir. 1945), lack of authority to conduct the investigation in issue, *e.g.*, Electric Bond & Share Co. v. S.E.C., 303 U.S. 419, 58 S.Ct. 766, 82 L.Ed. 526 (1938), and improper issuance of a given subpoena, *e.g.*, ICC v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729 (1912). If the court concludes that an administrative subpoena has been issued for the purpose of developing a criminal case it will decline enforcement. *See, e.g.*, Donaldson v. United States, 400 U.S. 517, 532–533, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); United States v. Salter, 432 F.2d 697, 700 (1st Cir. 1970); United States v. Roundtree, 420 F.2d 845, 847 (5th Cir. 1969); United States v. DeGrosa, 405 F.2d 926, 928 (3d Cir. 1969), cert. denied, 394 U.S. 973, 89 S.Ct. 1465, 22 L.Ed.2d 753 (1969); United States v. O'Connor, 118 F.Supp. 248, 250 (D.Mass.1953). In the grand jury context a court will not enforce a subpoena if its purpose is to gather evidence for a pending criminal indictment or information. *See, e.g.*, Beverly v. United States, 468 F.2d 732, 743 (5th Cir. 1972); United States v. George, 444 F.2d 310, 314 (6th Cir. 1971); In re Grand Jury Investigation (General Motors Corp.), 32 F.R.D. 175, 181 (S.D.N.Y.), appeal dismissed, 318 F.2d 533 (2d Cir.), cert. denied, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963); United States v. Pack, 150 F.Supp. 262, 263 (D.Del.1957); *cf.* United States v. Fisher, 455 F.2d 1101, 1104 (2d Cir. 1972). A court will not enforce a grand jury subpoena if the grand jury is not pursuing an investigation in good faith or is motivated by a desire to harass an individual. *See* United States v. Dionisio, 410 U.S. at 10, 93 S.Ct. 764, citing Branzburg v. Hayes, *supra*; United States v. Mara, 410 U.S. 43 n.5, 47 n.9, 93 S.Ct. 774 (Marshall, J., dissenting); Branzburg v. Hayes, 408 U.S. at 707–708, 709–710, 92 S.Ct. 2646 (Powell, J., concurring); Hale v. Henkel, 201 U.S. at 65, 26 S.Ct. 370; Bursey v. United States, 466 F.2d 1059, 1080 (9th Cir. 1972); United States v. Gurule, 437 F.2d 239, 241 (10th Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971). The court will not enforce a grand jury subpoena used only to compel a witness to appear in the United States Attorney's office. Durbin v. United States, 221 F.2d 520 (D.C.Cir. 1954). Although we have described these defenses to an enforcement proceeding as nonconstitutional, improper use of a subpoena does have constitutional overtones, for as Judge Friendly observed in United States v. Doe, 405 F.2d 436, 438 (2d Cir. 1968), "[e]ven though evidence is not within a testimonial privilege, the due process clause

protects against the use of excessive means to obtain it."

It is clear, then, that as a matter of substantive law the role of the district court in a civil proceeding looking to the enforcement of a subpoena—any subpoena—is not so circumscribed as the Government here suggests. The limited role that the Government would have the district court play in the enforcement process is illuminated by a colloquy which took place at the oral argument of this appeal. Hypothesizing an instance in which a United States attorney concluded that it might be in the interest of national security to have in the government files mug shots, fingerprints and handwriting exemplars of all members of a radical student organization at a local university, and proceeded to obtain them by the use of subpoenas identical to that issued here a member of the court asked the United States attorney if the district court's inquiry in an enforcement proceeding should be as limited as he suggested. As might be expected, the reply was that no United States attorney ever would do such a thing—which perhaps is true—but that in order to prevent delay in the grand jury process the scope of inquiry in all cases should be the same. Clearly the Supreme Court in *Dionisio* and *Mara* did not so intend, for if it did it overruled *sub silentio* a large body of established caselaw in which the courts have sought to confine the use of subpoenas within appropriate bounds.

■ At the same time we recognize that as with administrative subpoenas, United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), a presumption of regularity attaches to the grand jury's proceedings, and hence to a grand jury subpoena. *See, e.g.,* Beverly v. United States, *supra.* Given that presumption, the party objecting to enforcement has the burden of making some showing of irregularity. Usually, however, and almost universally in the case of grand jury subpoenas, all the relevant information is in the hands of the government enforcement agency. Here the administrative subpoena cases give guidance on that problem, for courts have recognized that a party seeking to show an abuse of the subpoena process can use discovery proceedings to meet his burden. *See* United States v. Newman, 441 F.2d 165 (5th Cir. 1971); United States v. Salter, 432 F.2d at 700; United States v. Roundtree, 405 F.2d at 852. Complicating the discovery problem in grand jury subpoena cases, however, is Fed.R.Crim.P. 6(e), providing for secrecy of matters occurring before the grand jury.

The issues in this case, then, relate not to the district court's substantive powers in an enforcement proceeding under 28 U.S.C. § 1826(a), but to the procedures appropriate to such a proceeding. That section applies both to court proceedings and to grand jury proceedings. Obviously the enforcing court has greater latitude in the matter of discovery in cases relating to the enforcement of subpoenas for proceedings as to which Rule 6(e) does not apply. On the other hand, because such proceedings are not secret it may be argued that in such cases the party resisting enforcement should be required to make a greater affirmative showing of the likelihood of abuse of process before he is afforded discovery. Certainly the fact of grand jury secrecy suggests that the party seeking enforcement of a grand jury subpoena be required to make some minimum showing of the existence of a proper purpose before it can trigger the enforcement machinery of the judicial branch.

The few courts which have considered the matter have not acted uniformly. In George v. United States, 319 F.Supp. 598, 599 (E.D.Mich.1970), aff'd, 444 F. 2d 310, 314 (6th Cir. 1971), a witness subpoenaed before a grand jury sought to enjoin his interrogation on the ground that the Government was using the grand jury as a means of obtaining discovery for use in a pending criminal case. The district court obtained from the Government an affidavit disclosing

the purpose of the grand jury's investigation, which it examined *in camera*. Based on the *in camera* examination the court concluded that the investigation was aimed at returning a new indictment which would supersede the one previously returned. In In re Grand Jury Subpoena to Central States, 225 F. Supp. 923 (N.D.Ill.1964), on a motion to quash subpoenas duces tecum as unreasonable and harassing, the district court held an *in camera* meeting with the grand jury to determine the nature and scope of its investigation. The district court opinion denying the motion to quash states:

"In the interest of justice and pursuant to my aforementioned supervisory power I have, as I indicated I would at the close of the oral arguments, met and conferred with the August 1963 Grand Jury. My purpose in holding this *in camera* meeting was and is to determine the intended scope and purpose behind investigations here challenged. I shall in the future and to the extent I deem necessary, continue meeting with this Grand Jury to inquire as to their progress. If it should ever become apparent to me that the Grand Jury is functioning improperly or abusing the rights of those appearing before it I will of course take necessary and appropriate action. Moreover, should petitioners at any time in the future feel that subsequently issued subpoenas or grand jury conduct are oppressive and abusive they are welcome to come in by motion, as they have here, and again, to the extent of the law set forth in this memorandum, seek the aid of this Court." 225 F.Supp. at 925–926.

▮▮▮▮ We need not in this case lay down inflexible procedures to govern all challenges to enforcement of any grand jury procedure, for the information here sought is both limited and unique. The Government wants only handwriting exemplars, fingerprints and a mug shot. It has no general right to any of these things. Authority for obtaining them

exists, if at all, solely because they are somehow relevant to the grand jury's investigation of an offense falling within its jurisdiction. In view of the fact that information which would justify obtaining the handwriting exemplars, fingerprints, and a mug shot, is in the Government's sole possession, we think it reasonable that the Government be required to make some preliminary showing by affidavit that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose. We impose this requirement both pursuant to the federal courts' supervisory power over grand juries and pursuant to our supervisory power over civil proceedings brought in the district court pursuant to 28 U.S.C. § 1826(a). We do not rule out the possibility that the Government's affidavit may be presented to the court *in camera*, but we do hold that Rule 6(e) does not require *in camera* presentation. There is a difference between disclosing "matters occurring before the grand jury" and disclosing that the matters requested by the subpoena are relevant to an investigation it is conducting. Thus unless extraordinary circumstances appear, the nature of which we cannot anticipate, the Government's supporting affidavit should be disclosed to the witness in the enforcement proceeding. *See* United States v. Dionisio, *supra*. If after such disclosure the witness makes application to the district court for additional discovery in the enforcement proceeding the court must in deciding that request weigh the quite limited scope of an inquiry into abuse of the subpoena process, and the potential for delay, against any need for additional information which might cast doubt upon the accuracy of the Government's representations. Finally, it may appropriately be noted that since the Government has no general right to retain files of handwriting exemplars, fingerprints and mug shots, any enforcement order may properly, on the witness' request, provide that if these materials do not prove to

be relevant to the grand jury's inquiry, or to a resulting indictment, they be returned to the witness or destroyed.

The judgment finding Mrs. Schofield in contempt will be reversed and the case will be remanded to the district court for further proceedings consistent with this opinion.

SEITZ, Chief Judge (concurring).

I agree with the opinion of the court that in order to invoke the district court's powers to enforce obedience to a grand jury subpoena, the government must initially make by affidavit or otherwise some minimal sworn showing of a proper purpose. Indeed, in both *Mara* and *Dionisio*, the government did in fact make a showing of a proper purpose, although it is unclear from the factual situation in *Dionisio* whether the showing there was sworn.

It seems to me that such a minimal requirement is almost indispensable if citizens are to be afforded minimum protection against the possible arbitrary exercise of power by a prosecutor through use of the grand jury machinery. See Campbell, Eliminate the Grand Jury, 64 J.Crim.Law & Criminology 174 (1973). Nor do I believe the minimal showing requirement here imposed is incompatible with *Dionisio* and *Mara*.

I also agree that the government showing should be disclosed to the witness unless the court finds a compelling reason for nondisclosure. I believe the government's disclosure, if the district court is satisfied as to its sufficiency, cannot be made the subject of an adversary hearing by the witness. Such a hearing would lead to the type of mini-hearing which the Supreme Court condemned in *Dionisio*. I emphasize my position on this point because if I read the opinion of the court correctly, it does not negate the possibility that the minimal showing of proper purpose can be factually litigated by the witness.

Since the government here made no showing of a proper purpose, the judgment should be reversed without prejudice to the government's right to renew its petition for enforcement accompanied by the requisite showing. If this is done, the enforcement order will follow unless the witness raises and establishes some properly cognizable legal defense. Certainly, it is clear her Fourth and Fifth Amendment claims would not be valid defenses in view of *Dionisio* and *Mara*.

I therefore concur in the reversal of the finding of contempt.