In re Subpoena Duces Tecum to Testify Before the Grand Jury Directed to the Custodian of Records of TRW with regard to Arthur F. GREN.

UNITED STATES of America, Petitioner–Appellee,

v.

TRW, INC., Respondent–Appellant.

No. 78–1665.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1980.

Decided Dec. 2, 1980.

Harry I. Jacobs, Cutler & Cutler, Los Angeles, Cal., argued, for respondent–appellant; Felice R. Cutler, Los Angeles, Cal., on brief.

Mark E. Beck, Los Angeles, Cal., David J. Federbush, C. Lee Peeler, FTC, Washington, D. C., argued, for petitioner–appellee; Michael C. Denison, Asst. U. S. Atty., Los Angeles, Cal., on brief.

Before GOODWIN and FERGUSON, Circuit Judges, and PRICE,* District Judge.

PRICE, District Judge.

TRW appeals from a District Court Order which denied its motion to quash a Grand Jury Subpoena Duces Tecum.

---

* The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

TRW is a corporation which includes a division which provides a subscriber with consumer credit information. In November, 1977, TRW was served with a Subpoena Duces Tecum directing it to deliver to a Grand Jury any records in its possession concerning Arthur F. Gren. TRW moved to quash the subpoena, asserting that compliance with the subpoena not authorized by a magistrate or a district court judge would violate the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.[1] The district court denied this motion, and TRW appealed. Arthur Gren, whose records were sought by the Grand Jury subpoena, did not seek to intervene in the initial hearing on TRW's motion to quash or in this appeal.

The rule generally governing the appealability of denials of motions to quash was most recently described by the Supreme Court in *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85, 88 (1971):

"... one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey...."

See *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The court in *Ryan* did, however, note that there were certain very limited exceptions to this rule, including that defined in *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 317, 62 L.Ed. 950. In *Perlman* the court held that when a third party custodian was directed to produce exhibits which were the property of the petitioner, and the petitioner intervened to challenge the validity of the subpoena, the denial of the motion to quash was appealable. This was because the third party addressee, the

Clerk of the District Court "could hardly have been expected to risk a citation for contempt in order to secure a permanent opportunity for judicial review". *United States v. Ryan, supra.* See *In Re Grand Jury Proceedings*, 563 F.2d 577, 580 (3d Cir. 1977); *In re Faltico*, 561 F.2d 109, 110 n. 2 (8th Cir. 1977).

TRW relies on the *Perlman* exception and argues that the underlying rationale of that decision is applicable here. We agree.

The Fair Credit Reporting Act had a stormy birth in Congress. The Senate Bill (S. 823) passed out of that house containing two separate sections pertinent to our inquiry.

Section 604 provided:

"A consumer reporting agency may furnish a consumer report under the following circumstances and no others:

"(1) In response to the order of a court having jurisdiction to issue such order ..."

Section 608 provided:

"Notwithstanding the provisions of Section 604, a consumer reporting agency may furnish identifying information respecting any consumer, limited to his name, address, former address, places of employment, or former places of employment, to a governmental agency."

H.R. 1634, which was the bill which ultimately became House version of this Act, originally contained Section 35:

"A consumer reporting agency may not furnish information on individuals in its files, except identifying information such as names, addresses, former addresses, places of employment, or former places of employment, to a governmental agency for purposes other than those listed in section 34(b) unless pursuant to legal process.[2]

This provision was Section 608 of the 1970 amendments to the Act.

---

1. Specifically, petitioners rely on 15 U.S.C. § 1681f:

   "Notwithstanding the provisions of Section 604 [15 U.S.C. § 1681b], a consumer reporting agency may furnish identifying information respecting any consumer, limited to his name, address, former address, places of employment, or former places of employment, to a governmental agency."

2. See Hearings before the Subcommittee on Consumer Affairs of the Committee on Banking and Currency, House of Representatives, 91st Congress, 2nd Session.

The Senate version won out, and when finally passed, the language enacted into law on this point is as follows:

"A consumer reporting agency may furnish a consumer report under the following circumstances, and no other:

"(1) In response to the order of a court having jurisdiction to issue such order," [15 U.S.C. 1681b]

and

"Notwithstanding the provisions of Section 604 [15 U.S.C. 1681b], a consumer reporting agency may furnish identifying information respecting any consumer limited to his name, address, former address, places of employment or former places of employment, to a governmental agency." [15 U.S.C. 1681f]

A careful reading of the legislative history, and particularly the hearings before the Subcommittee on Consumer Affairs of the Committee on Banking and Currency of the House of Representatives, 91st Congress, 2nd Session, indicates that this very issue was before the Congress. Representatives of credit reporting agencies, including the one presently before this court, the AFL·CIO, and the American Civil Liberties Union all argued for the position that governmental agencies not engaged in an activity which included the extending of credit should have very limited access to information held by a consumer reporting agency.

On the other hand, Mr. Richard G. Kleindienst, then Deputy Attorney General of the United States, Mr. Hugo A. Rinta, then the Acting General Counsel of the Treasury Department, both argued forcibly that the governmental agencies should have unlimited access to this information, particularly in the law enforcement and revenue departments of the government. Indeed, Mr. Kleindienst suggested an amendment to or additional section to the Act which would read as follows:

"No provision of this Act is intended to prohibit or limit the furnishing of information requested by a public investigative or law enforcement agency in the performance of its official duty."

It was against this background that the Act was finally adopted containing the provisions set forth above.

What other attributes we may ascribe to Congress, this court can hardly hold that Congress did not know, when it enacted this law, that Grand Jury subpoenas were not the equivalent of a court order.

The evolution of the mechanics of issuance of a Grand Jury Subpoena is not at all clear, but as is noted in *In Re Grand Jury Proceedings*, 486 F.2d 85 at 89, 90 (1973):

"First, although federal grand juries are called into existence by order of the district court, Fed.R.Crim.P. 6(a); 18 U.S.C. § 1331, they are 'basically ... a law enforcement agency.' *United States v. Cleary*, 265 F.2d 459, 461 (2nd Cir.), *cert. denied*, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). They are for all practical purposes an·investigative and prosecutorial arm of the executive branch of government. See 8 J. Moore, Federal Practice ¶ 6.02[1], [6] (2d ed. Cipes ed. 1972). Second, although like all federal court subpoenas grand jury subpoenas are issued in the name of the district court over the signature of the clerk, they are issued pro forma and in blank to anyone requesting them. Fed.R.Crim.P. 17(a). The court exercises no prior control whatsoever upon their use. Third, although grand jury subpoenas are occasionally discussed as if they were the instrumentalities of the grand jury, they are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch. Grand jury subpoenas then, when they are brought before the federal courts for enforcement, for all practical purposes are exactly analogous to subpoenas issued by a federal administrative agency on the authority of a statute, without any prior judicial control."

*In Re Grand Jury Proceedings*, 486 F.2d 85 at 89, 90 (1973).

As conceded by counsel for the government at oral argument, the usual practice in most federal districts and counties of the various states is for the *clerk* of the several courts to issue a grand jury subpoena ex parte upon the application of the prosecutor's office. Frequently, the clerk furnishes the prosecutor with these subpoena forms issued in blank.

Further, at both federal and state levels, a myriad of administrative agencies have been authorized to issue administrative subpoenas on their own volition, without even a visit to the office of the Clerk of the Court to pick up the forms!

A consumer reporting agency rarely has direct contact with the persons about whom it accumulates information. Indeed, it is usually the person, firm or organization granting credit who has contact with the affected consumer; while the consumer reporting agency is merely the repository of all known information collected in a variety of ways about the individual involved. Hence, it is no answer to say that Mr. Gren, or any other person whose records are sought by a grand jury, may intervene and contest the application since there is neither a common law nor statutory duty on the part of the consumer reporting agency to notify the person affected of the receipt of the grand jury's command.

It may be argued that Congress, by not providing for a procedure by which the court orders contemplated under the section are to be obtained, intended to leave the law as it was; however, we note that Congress in the past has frequently left the courts to their own devices in fashioning due process procedures in unique situations.[3]

---

**3.** Indeed, federal trial judges have already suggested the procedure by which "court orders" may be obtained under this legislation, as Judge William O'Kelley, United States District Judge, District of Georgia, Atlanta Division, writing in *In Re Subpoena Duces Tecum Concerning Credit Bureau, Inc. of Georgia*, (No. GJ 79–4) states:

"Nor does it necessarily follow that requiring a grand jury to obtain a court order will hamper its investigatory function. The court finds that grand jury secrecy is adequately protected by requiring an *in camera ex parte* application for a court order.[4] *See* Fed.R. Crim.P. 6(e). Such an application would require only a slight delay and would further the legislative purpose behind the FCRA by ensuring that the information sought is relevant to or necessary for an ongoing grand jury investigation. Accordingly, the court finds that a grand jury subpoena is not an 'order of the court' within the meaning of the Fair Credit Reporting Act.

"In anticipation of this ruling by the court, the United States Attorney has moved to make the grand jury subpoena an order of the court. In an *in camera ex parte* hearing before the court, the United States Attorney made a good faith showing that the consumer records sought are relevant to an ongoing grand jury investigation.[5] Accordingly, the United States Attorney's motion is granted, and the Credit Bureau is ordered to comply with the subpoena duces tecum."

"n. 4 In this respect the court differs with dicta in the recent decision of In re Motion of Mary Vaughn and Credit Bureau to Quash Subpoena Duces Tecum, No. GJ 80–3 (N.D.Ga. July 14, 1980) (Moye, J.), to the effect that the consumer whose records are sought must be notified and have a chance to respond to the government's motion for an order. The court believes that this would be violative of the policy behind rule 6(e) of the Federal Rules of Criminal Procedure and would severely hamper the investigatory function of the grand jury without substantially furthering the purposes behind the FCRA. The court further believes that the consumer's 'right to know' is adequately protected by '§ 609(a)(3)(B) of the Act, 15 U.S.C. § 1681g(a)(3)(B), which requires the consumer reporting agency to disclose to whom his file has been furnished if the consumer so requests within six months of when the report is obtained."

In a footnote to his decision, Judge O'Kelley notes that Congress, by not completing its task, frequently breeds a multiplicity of judicially created procedures.

"n. 5 The court believes the most expeditious procedure for the United States Attorney to follow in future cases would be to make an application to the court for an order prior to issuing the subpoena duces tecum. This will alleviate the burden on consumer reporting agencies to move to quash every subpoena duces tecum issued to them. *See also* In re Motion of Mary Vaughn and Credit Bureau to Quash Subpoena Duces Tecum, slip op. at 3 (invoking court process at an earlier point may enhance privacy of consumer credit information)."

The present citation to In re Motion of Mary Vaughn and Credit Bureau to Quash Subpoena Duces Tecum is "United States District Court for the Northern District of Georgia–Atlanta Division, GJ 80–3."

For all the foregoing reasons, it would appear that the person or organization having custody of the type of information covered by the Fair Credit Reporting Act is faced with even a greater dilemma than was *Perlman*. *Perlman* would risk only being held in contempt of court for failure to obey; the custodian of the information possessed by a consumer reporting agency must risk on the one hand being held in contempt of court for failure to comply, and on the other being sued for damages[4] if he does in fact comply.

Accordingly, the order of the District Court denying petitioner's motion is reversed, and the court is instructed to enter judgment consistent with this opinion.[5]

In that decision, Judge Charles A. Monge points to another vice of Congressional silence.

In *In re TRW*, 460 F.Supp. 1007 (E.D.Mich. 1978) equated a Grand Jury subpoena with a court order.

In *In re Credit Information Corp. of New York*, 437 F.Supp. 969 (S.D.N.Y.1978), the court reached the opposite result.

The two Georgia cases cited, *supra*, in this footnote basically agreed as to the nature of a Grand Jury subpoena, but differed as to the procedure to be employed to obtain a "court order" within the meaning of the Act.

4. 15 U.S.C. 1681n reads as follows:
"Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this title [15 U.S.C. §§ 1681, et seq.], with respect to any consumer is liable to that consumer in an amount equal to the sum of–
(1) any actual damages sustained by the consumer as a result of the failure;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."
15 U.S.C. 1680o reads as follows:

"Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this title [15 U.S.C. §§ 1681 et seq.], with respect to any consumer is liable to that consumer in an amount equal to the sum of–
(1) any actual damages sustained by the consumer as a result of the failure;
(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."

5. The government's reliance on *United States v. Kostoff, et al.*, 585 F.2d 378 (9th Cir. 1978), is ill placed. That case contains no analysis of the issues involved here. It deals with criminal charges of mail fraud and bank credit fraud. The credit profiles involved in *Kostoff* were the subject of the criminal acts charged; i. e., the "doctoring" of credit files, thus no issue of consumer privacy or protection was involved. The court's language at 585 F.2d, at 380, to the effect that the defendant's argument that a grand jury subpoena is not a court order "is specious" should be limited to the context of the Kostoff case.