USCA1 Opinion

 

 February 7, 1992 ___________________ No. 92-1028 IN RE: LAWRENCE J. COSTELLO, JR., Petitioner. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ___________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ___________________ Lois M. Lewis on brief for appellant. _____________ Wayne A. Budd, United States Attorney and Elizabeth Keeley, ______________ ________________ Assistant United States Attorney, on brief for appellee. __________________ __________________ Per Curiam. The appellant, Lawrence J. Costello, Jr., ___________ appeared before a grand jury on September 12, 1991, pursuant to a subpoena. The grand jury was investigating a possible violation of 18 U.S.C. 2114, relating to an armed robbery of a postal employee and truck occurring on April 19, 1991. Costello appeared without counsel. He was sworn and advised of his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. He was then asked to provide fingerprint and palmprint exemplars and to be photographed. He refused to do so. That same day, the grand jury voted to order Costello to furnish the requested material and Costello was informed of the grand jury order. He again refused to comply. The government then moved in the district court for an order to compel Costello to comply with the grand jury directive to furnish fingerprint and palmprint exemplars and to be photographed. The district court granted the motion to compel on October 8, 1991. On October 24, 1991, Costello was again subpoenaed before the grand jury. He again appeared without counsel. He was served with a copy of the court order of October 8th. He again refused to comply and claimed a Fifth Amendment privilege against self-incrimination. On November 7, 1991, the government moved, in the district court, for an order of contempt. 28 U.S.C. 1826. At Costello's request, the government also moved for appointment of counsel on Costello's behalf. Counsel was appointed for Costello on December 2, 1991 and a hearing was held on January 6, 1992. At that hearing, counsel expressly disavowed any reliance on the Fifth Amendment.1 Rather, counsel made two other contentions. First, counsel argued that Costello had just cause for non-compliance because, counsel contended, the government already had the sought-after items within its possession or could easily obtain them from other law enforcement agencies. Counsel based this contention on the following. Costello was arrested on May 8, 1991, in Medfield, Massachusetts by a local police officer, who allegedly witnessed Costello robbing an armored car.2 Costello was transported to the Medfield police station where, according to Costello, he was fingerprinted, palmprinted, and extensively photographed. Also according to Costello, two F.B.I. agents were present at the scene of arrest and at the Medfield station and, in Costello's presence, these agents requested copies of the prints and the photographs. Costello claims that two postal inspectors were at the Medfield station as ____________________ 1Counsel obviously was cognizant of the settled caselaw. "It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." United States _____________ v. Dionisio, 410 U.S. 1, 5-6 (1973) (noting with approval prior ________ cases which held that the Fifth Amendment privilege offered no protection against compulsion to submit to fingerprinting and photographing). Nor would compelled submission to fingerprinting, palmprinting, and photographing infringe any Fourth Amendment right. See id. at 11, 14; see also United ___ ___ _________ ______ States v. Mara, 410 U.S. 19, 21 (1973). ______ ____ 2A second individual was arrested along with Costello and a manhunt was undertaken to locate a third suspect. This second individual also was subsequently subpoenaed before the grand jury, refused to comply with the court's order to furnish fingerprint and palmprint exemplars and to be photographed, and was held in contempt. He has not appealed that contempt finding. We, therefore, do not discuss him further. 3 well. After his arraignment the next day, Costello was transported to the Norfolk County House of Correction, where, according to Costello, he was again fingerprinted and palmprinted.3 Second, counsel argued that the court should direct the government to file affidavits detailing (1) the relevance of each item sought to the grand jury's investigation, (2) the jurisdiction of the grand jury to request the item and (3) that the government requests the item for the purposes of the grand jury and no other reasons. Counsel suggested that such a requirement was appropriate to ensure against grand jury abuse and so that Costello, "already subject to extensive state prosecution, is not exposed unnecessarily to other crimes." Government counsel responded that (1) it was not required to provide information as to the basis for the request for the items sought and (2) in any event, it would not be seeking a contempt order if, in fact, it had access to the items sought. Counsel conceded that fingerprints of Costello existed, but stated that John Dunn, the postal inspector in charge of the April postal truck robbery, had inquired as to palmprints and a right-side profile photograph of Costello and was told that those materials ____________________ 3According to counsel, in connection with the May 8th arrest, Costello has been charged in fifteen indictments for attempted murder, armed robbery while masked, attempted armed robbery, unlawful possession of a stolen motor vehicle and possession of stolen motor vehicle license plates. Prior to his being transferred to federal custody as a result of the finding of contempt, Costello had been held in state custody since his May 8th arrest, unable to post the required bail amount of one million dollars. 4 did not exist. John Dunn thereafter was sworn in and testified that the taking of palmprints is not standard procedure in routine cases. He opined that identification was not an issue with respect to the May armored car robbery and testified that the taking of a profile photograph is not standard procedure with many local police departments. He had spoken to State Trooper Nagle, the officer in charge of the May armored car robbery investigation, who informed Dunn that he had no palmprints or right-side profile photographs of Costello. Dunn stated that he had seen a front facial photograph of Costello that Nagle had in his file. Dunn further testified that, after Costello filed his affidavit in which he stated that extensive photographs were taken, he phoned Trooper Nagle. He told Nagle of the affidavit and asked him to check his file again. With Dunn still on the line, Nagle pulled his file and said that he had photographs of tattoos on Costello's body, but not any profile shot of his face. Dunn testified: I told him that there had been an affidavit filed saying that this happened -- I mean, from a practical standpoint, if they're there, I'm wasting my time. I said, "Look in your file again." He looked in his file again and he said, "He may be talking about the tattoo pictures I took of his body." That was his response to me, "I have pictures of different tattoos on the body and maybe they4 thought at the time I was taking a side shot of their [sic] face." That was his response to me. ____________________ 4The plural refers to Costello and the second individual arrested, who also had tattoos. 5 Dunn also testified that he had obtained a photographed record of Costello's fingerprints from California, where, according to Dunn, Costello had previously served prison time, but there were no palmprints or right-side profile photographs. Dunn stated that he had learned, from the U.S. Attorney's office, that the FBI did not have any palmprints or profile photographs. He testified that, in his opinion, he had exhausted the avenues from which to obtain those sought-after items. Thereafter, the court heard argument from counsel. Counsel pointed out that the government had conceded that it had fingerprints, yet was asking for an additional set, and argued that it was reasonable to assume that palmprints and side profile photographs were taken. She reiterated the request that the court require the government to disclose the nexus between the items sought and the grand jury investigation. The district court concluded, based on Costello's affidavit and Dunn's testimony, that Costello had failed to show, as his counsel urged, that the grand jury was seeking something to which it already had access and, in light of that finding, the question whether the government ought to be required to file affidavits relating why it is seeking these items, despite being able to obtain them from other sources, was moot. The district court found Costello in contempt of his October 8th order. 28 U.S.C. 1826. Two days later, counsel moved for reconsideration, stating that she had been informed by Costello that he was willing to be fingerprinted and palmprinted, but that 6 he was still unwilling tobe photographed. That motionwas denied. Counsel filed a notice of appeal and sought a stay pending appeal. The court denied a stay of the contempt order pending appeal. It also denied a motion by Costello for an order directing the government to inform him of the termination date of the grand jury. Costello appealed the order of contempt and we denied a stay pending appeal. We now resolve the appeal. In view of counsel's representation in the motion for reconsideration filed in the district court that Costello is now willing to provide the fingerprint and palmprint exemplars, we focus on the only remaining item which Costello apparently currently contests, i.e., allowing himself to be photographed.5 We reiterate that this grand jury directive to be photographed impinges on no constitutional privilege of Costello. See note 1, ___ supra. _____ Costello's arguments on appeal are meritless. First of all, they seem misplaced. Counsel argues that the government is seeking material which it already has in its possession or to which it has access. Based on the evidence before the district court, however, we cannot say that the district court was clearly erroneous in finding that the government, in fact, had neither possession of, nor access to, a right-side profile photograph of ____________________ 5In any event, the result would not change because we view the compelled display of these identifiable physical characteristics in the same light. See note 1, supra. ___ _____ 7 Costello.6 In re Grand Jury Subpoenas (Anderson), 906 F.2d _________________________________________ 1485, 1488 (10th Cir. 1990) (a district court's findings of fact in a contempt matter are reviewed under the clearly erroneous standard). So, Costello's starting premise is factually and fatally wrong. Consequently, insofar as he suggests he is being harassed for duplicative material, his next contention, that the government ought to be required to make a preliminary showing, by affidavit, of the general purpose for the subpoena, is misplaced. Costello may be making a broader contention, however. He cites caselaw from the Third Circuit which, pursuant to the ____________________ 6. In affirming this finding of the district court, we do not suggest that government was required to show that it neither had possession of, nor access to, the items sought. Though Costello denies that he is suggesting that the government should show a "need" for the material sought, we think his claim of good cause for refusing to comply because the government already has possession of, or access to, what it seeks is, in essence, a claim that the grand jury does not "need" him to submit to any additional photographing. Whatever the viability of requiring the government to show "need and relevance" prior to enforcement of a grand jury subpoena, see In re Grand Jury Proceedings ___ _______________________________ (Hill), 786 F.2d 3, 5 n.1 (1st Cir. 1986), a question we do not ______ resolve, such a requirement in this case which involves a physical characteristic "constantly exposed to the public," United States v. Dionisio, 410 U.S. at 14, strikes us as ______________ ________ particularly unwarranted, when considering the resulting costs. Requiring the government to show both that the information it hopes to obtain from [the summoned witness] is significant and that that information is unavailable from other sources would obviously impair the efficiency of grand juries. Such a requirement would bring investigations to intermittent standstills as the government set out to prove the necessity of each piece of information it sought to obtain. In re Grand Jury Proceedings (John Doe), 862 F.2d 430, 431-32 (2d _______________________________________ Cir. 1988). 8 federal courts' supervisory powers, requires the government, in __ every case, to make a preliminary showing by affidavit that each __________ item is (1) at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction and (2) not sought primarily for another purpose. In re Grand Jury __________________ Proceedings (Schofield I), 486 F.2d 85, 93 (3d Cir. 1973); In re _________________________ ______ Grand Jury Proceedings (Schofield II), 507 F.2d 963, 966 (3d _______________________________________ Cir.), cert. denied, 421 U.S. 1015 (1975). But, we have _____________ previously considered, and rejected, adopting such a supervisory role. In In re Pantojas, 628 F.2d 701, 704-05 (1st Cir. 1980), ______________ we declined to impose the Schofield procedure, finding "little to _________ convince us that prosecutors are regularly overreaching or that the district courts have been insensitive to irregularities that may occur." There is nothing in the record before us suggesting that, in the interim since Pantojas, grand jury abuses have ________ either regularly occurred or escaped district court attention. And, we certainly see no such evidence with respect to the particular case before us. We acknowledge that the Supreme Court recently suggested that "a court may be justified in a case where unreasonableness is alleged in requiring the Government to reveal the general subject of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion." United ______ States v. R. Enterprises, Inc., 111 S. Ct. 722, 728 (1991). The ______ ____________________ Court went on to say that "[w]e need not resolve this question in the present case, however, as there is no doubt that respondents 9 knew the subject of the grand jury investigation pursuant to which the business records subpoenas were issued." Id. So too, ___ in the case before us, we need not address this concern as, without a doubt, Costello knew that the grand jury was investigating the April 1991 postal truck robbery, as evidenced by his response to the government's petition for contempt, filed three days before the contempt hearing.7 Lastly, Costello contests the district court's denial of his request for an order directing the government to disclose the termination date of the grand jury. The government urges us not ____________________ 7. And, in fact, Costello may have received some indulgence. A subpoena recipient, who claims that compliance is unreasonable, may not necessarily be entitled to know even the general subject of the grand jury's investigation. In cases where the recipient of the subpoena does not know the nature of the investigation, we are confident that district courts will be able to craft appropriate procedures that balance the interests of the subpoena recipient against the strong governmental interests in maintaining secrecy, preserving investigatory flexibility, and avoiding procedural delays. For example, to ensure that subpoenas are not routinely challenged as a form of discovery, a district court may require that the Government reveal the subject of the investigation to the trial court in camera, __________ so that the court may determine whether the motion to quash has a reasonable prospect for success before it discloses the subject matter to the challenging party. Id. at 728-29. The government disclosed the subject matter of ___ the grand jury investigation to the district court in camera when _________ it initially sought the order to compel in October 1991. Even considering this recent pronouncement by the Supreme Court, therefore, there is simply no basis for Costello's challenge to the issuance of this grand jury subpoena. 10 to address it, claiming that it was not timely raised and, in any event, would not excuse Costello's contempt of the order compelling him to provide the exemplars and to be photographed. We agree that the refusal to provide Costello with the grand jury's termination date is not just cause for his failing to comply with the prior court order. Nonetheless, this issue was raised in the district court, even if during the hearing on the stay request after the finding of contempt issued, and the district court ruled on this motion. We believe, therefore, it was timely raised. We are unable to review its merits, however, for the lack of a sufficient record. Although the record contains a copy of Costello's motion seeking disclosure of the termination date of the grand jury, with a margin order by the district court, "1/8/92 Denied after hearing this date," Costello has not provided us with a transcript of that January 8th hearing, nor has he told us of the basis for the court's ruling. In re Grand ____________ Jury Investigation (DiLoreto), 903 F.2d 180, 185 (3d Cir. 1990), _____________________________ upon which Costello relied, assumed, without deciding, that the standard of review of a district court order denying disclosure of the termination date of a grand jury is abuse of discretion. Costello does not argue for a less deferential standard of review and we also shall assume, without deciding, that the district court's ruling on this matter may not be disturbed without a showing of an abuse of discretion. But without any indication of the basis for the ruling, we cannot find any abuse of discretion 11 or undertake any otherwise meaningful appellate review. Costello, as appellant, is responsible for providing this court with a sufficient record upon which to review the ruling he is challenging. See, e.g., United States v. Lebron-Gonzalez, 816 _________ _____________ _______________ F.2d 823, 827 (1st Cir.) (the burden of seeing that a record is adequate to present issues on appeal rests on appellants), cert. _____ denied, 484 U.S. 843 (1987). He has not done so. We therefore ______ decline to disturb the district court's denial of his motion for disclosure. Affirmed. _________ 12