697 F.2d 277
 12 Fed. R. Evid. Serv. 460
 In the Matter of GRAND JURY SUBPOENA DUCES TECUM ISSUED ON
JUNE 9, 1982, TO "CUSTODIAN OF RECORDS, Ellison,
Nelson & Kennedy," Attorneys.
DOROKEE COMPANY; Jonis Co.; Andor, Inc.; Finis Smith;
and Doris Smith, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 82-2093.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 5, 1983.
 
 Carl Hughes of Hughes, Nelson & Gassaway, Oklahoma City, Okl., for appellants.
 Frank Keating, U.S. Atty., and Nancy A. Nesbitt, Asst. U.S. Atty., Tulsa, Okl., for appellee.
 Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 Appellants Finis and Doris Smith, Dorokee Company, Jonis Company, and Andor, Inc. (hereinafter referred to collectively as the Smiths) appeal a district court order denying a motion to quash a grand jury subpoena duces tecum. The subpoena directed the production of the Smiths' federal tax returns for the years 1977-81, and the related work papers, financial statements, and correspondence. The subpoena was issued to the Smiths' attorney/accountant, Kenneth Ellison, who had prepared the federal income tax returns of the Smiths for the years in question. The Smiths intervened and filed a motion to quash, asserting that production of the material would violate the attorney-client privilege, the attorney work product privilege, and their Fourth and Fifth Amendment rights.
 
 
 3
 The district court reformed the subpoena and determined that it was not overbroad as reformed and was otherwise properly issued. After an in camera inspection of the subject material, the court suppressed the production of three documents that it determined were covered by the attorney-client privilege, and ordered production of the rest. On appeal, the Smiths argue that production would violate the attorney-client privilege, and the Fourth and Fifth Amendments.
 
 I.
 THE ATTORNEY-CLIENT PRIVILEGE
 
 4
 Although Ellison is a certified public accountant as well as an attorney, he holds himself out solely as a practicing attorney. Consequently, the attorney-client privilege could be applicable. The privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance" from the attorney in his capacity as a legal advisor. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The privilege is to be construed narrowly. Id.; In re Sealed Case, 676 F.2d 793, 806-07 (D.C.Cir.1982). When it is raised as a bar to the production of preexisting documents given by a client to his attorney to aid in legal representation, it protects only that material which would have been privileged in the hands of the client. Fisher, 425 U.S. at 404, 96 S.Ct. at 1577.
 
 
 5
 In this case, the district court concluded that the subject material was not covered by the attorney-client privilege on two grounds: the Smiths could not have refused to produce it themselves by asserting their Fifth Amendment privilege against self-incrimination; and the material was not generated in the course of obtaining legal advice.
 
 A.
 
 6
 In determining that the documents would not have been shielded by the Fifth Amendment, the court observed that the Smiths had made a blanket assertion of privilege without explaining why a particular privilege attached to a particular document.[1] The court also pointed out that the record did not identify which documents were in fact authored by the Smiths. Consequently, it concluded that the Smiths failed to meet their burden of proving the existence of the privilege. The court alternatively held that, even assuming the Smiths had authored some of the material, the documents are not both testimonial and incriminating in nature so as to be protected by the Fifth Amendment. See Fisher, 425 U.S. at 408, 96 S.Ct. at 1579.
 
 
 7
 Whether the act of producing documents in response to a subpoena is both testimonial and incriminating is a difficult issue whose resolution depends "on the facts and circumstances of particular cases or classes thereof." Id. at 411, 96 S.Ct. at 1581; see also id. at 414-30, 96 S.Ct. at 1582-1590 (Brennan, J., concurring). Our review of this question here is rendered impossible by the Smiths' failure to specify either the origin of each document or which privilege allegedly pertains to each one. We cannot determine to which documents the Fisher analysis may be applicable. We will not speculate or render what is in essence an advisory opinion.
 
 
 8
 The burden of establishing the applicability of a privilege rests on the party seeking to assert it. United States v. Bump, 605 F.2d 548, 551 (10th Cir.1979); see Fisher, 425 U.S. at 423, 96 S.Ct. at 1587 (Brennan, J., concurring). The Smiths' broad declarations simply do not meet this burden. Because the Smiths have failed to show that they could have asserted the Fifth Amendment to bar production of the material, they cannot invoke the attorney-client privilege on this ground.
 
 B.
 
 9
 We now turn to the question whether the documents are subject to the attorney-client privilege because they involve confidential communications with respect to the seeking of legal advice. The district court found that Ellison had not been retained by the Smiths for legal assistance in connection with the grand jury investigation generating the subpoena.[2] The court further found that "the documents are of a financial and accounting nature pertaining to the routine annual preparation of the Smiths' joint income tax returns by Ellison." Rec., vol. I, at 114. The court then concluded that the work performed for the Smiths by Ellison was not the provision of legal advice, but instead constituted the provision of business advice by the rendering of financial and accounting services.
 
 
 10
 On their face the documents at issue appear to be copies of the Smiths' joint tax returns prepared by Ellison, and either tax work sheets prepared by Ellison or financial and accounting documents furnished to Ellison by the Smiths for use in preparing the returns. The Smiths contend on appeal that these documents are covered by the attorney-client privilege because the giving of tax advice and the preparation of tax returns constitute the provision of legal advice.
 
 
 11
 The courts have not resolved this issue uniformly. The Fifth Circuit has squarely held that "although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service. Communications relating to that service should therefore not be privileged, even though performed by a lawyer." United States v. Davis, 636 F.2d 1028, 1043 (5th Cir.), cert. denied, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (footnote omitted); see also United States v. Gurtner, 474 F.2d 297, 298-99 (9th Cir.1973); Olender v. United States, 210 F.2d 795, 806 (9th Cir.1954), cert. denied, 352 U.S. 982, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957). However, the court in Davis recognized that "[s]ome courts have suggested, to the contrary, that tax return preparation and tax advice is sufficiently 'legal' in nature to trigger the privilege." Davis, 636 F.2d at 1043; see, e.g., Colton v. United States, 306 F.2d 633, 637 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); In re Shapiro, 381 F.Supp. 21, 22 (N.D.Ill.1974).
 
 
 12
 We need not resolve this issue here because the Smiths have failed to establish their entitlement to the privilege. Even those courts holding that the attorney-client privilege can arise from the preparation of income tax returns do not apply the privilege to documents given by a client to an attorney for inclusion in the client's income tax return, because such information is obviously not intended to remain confidential. See Colton, 306 F.2d at 638; In re Shapiro, 381 F.Supp. at 23; United States v. Merrell, 303 F.Supp. 490, 492-93 (N.D.N.Y.1969); United States v. Threlkeld, 241 F.Supp. 324, 326 (W.D.Tenn.1965). The same is true for retained copies of income tax returns, Colton, 306 F.2d at 640, Shapiro, 381 F.Supp. at 23; Merrell, 303 F.Supp. at 493, and income tax work sheets or schedules prepared by an attorney to aid in preparation of a tax return, id. However, it may well be that the attorney-client privilege is applicable when a client provides information to an attorney and leaves the decision whether to include that information in the return to the attorney's discretion. See, e.g., United States v. Baucus, 377 F.Supp. 468, 472 (D.Mont.1974); Threlkeld, 241 F.Supp. at 326.
 
 
 13
 The Smiths argue that the subpoenaed material must be held to fall within this latter category of information, "since no attempt was made to have the witness disclose whether there were any non-privileged statements contained in the documents which could be separated from the privileged statements." Brief of Appellants at 20. However, the Smiths misconceive the nature of their burden. It is not the Government's responsibility to sort out what is privileged from what is not; the burden of establishing a privilege is on the one who asserts it. See, e.g., United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir.1974). As the district court noted, the Smiths made no attempt to explain why a particular document should be found privileged. They have totally failed to establish which, if any, of the subpoenaed materials were supplied by them, much less whether the information was "communicated by the client with the direction that it not be inserted in the return or with the direction that it be, or not be, so inserted in the discretion and judgment of [the attorney]." Threlkeld, 241 F.Supp. at 326. As we have previously stated, we will not speculate as to the nature of the information provided by the Smiths to their lawyer. Accordingly, even assuming arguendo that the attorney-client privilege may arise from the preparation of tax returns, we conclude that it does not apply in this case.
 
 II.
 FOURTH AMENDMENT CLAIMS
 
 14
 The Smiths assert that failure to quash the subpoena will result in denial of their Fourth Amendment rights.[3] They claim the enforcement order violated procedural due process and was based on an insufficient showing of relevancy. We disagree.
 
 
 15
 "[T]he party seeking enforcement of a grand jury subpoena [is] required to make some minimum showing of the existence of a proper purpose before it can trigger the enforcement machinery of the judicial branch." In re Schofield, 486 F.2d 85, 92 (3d Cir.1973). The Government must make a preliminary demonstration that the material sought is relevant to a proper grand jury investigation. Id. at 93.
 
 
 16
 The Smiths object to the form of the required showing in this case, which was provided by the sworn testimony of a special agent of the Federal Bureau of Investigation. In Schofield, the court stated that the showing could be made by an affidavit disclosed to the witness in the enforcement proceeding. Id. To the extent that the Smiths contend this sworn testimony is not the substantial equivalent of an affidavit, their argument borders on the frivolous.
 
 
 17
 We likewise find no merit in the Smiths' contention that they were denied adequate notice by the use of sworn testimony. The court in Schofield did not require that the affidavit be provided to the witness until the enforcement proceeding. Moreover, in this case seven hearings on the motion to quash were held following the one at which the FBI agent testified, and the alleged lack of adequate notice was never brought to the attention of the trial court.
 
 
 18
 The Smiths also argue that the showing of relevancy was insufficient. A grand jury subpoena is not unreasonable under the Fourth Amendment if it: (1) commands the production only of things relevant to the investigation; (2) specifies the items with reasonable particularity; and (3) covers only a reasonable period of time. In re Berry, 521 F.2d 179, 183 (10th Cir.), cert. denied, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975); United States v. Gurule, 437 F.2d 239, 241 (10th Cir.1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971).
 
 
 19
 The district court in this case concluded that the agent's testimony more than satisfied the above requirements, noting that "the records sought to be produced relate to the matters under investigation." Rec., vol. I, at 104. The Smiths apparently contend that a higher standard of relevancy should apply, citing In re Appeal of Hughes, 633 F.2d 282 (3d Cir.1980). However, that case is inapposite because the material sought by subpoena there was subject to a valid work product claim. No valid claim of privilege exists with respect to the material in this case. Accordingly, the trial court correctly concluded that the Gurule requirements are applicable and that they were satisfied.
 
 
 20
 The order is affirmed.
 
 
 
 [1]
 This court has explicitly condemned such a blanket assertion. See United States v. Hodgson, 492 F.2d 1175, 1177 (10th Cir.1974). The district court noted that this failure by the Smiths was sufficient in and of itself to justify denying the motion to quash
 
 
 [2]
 We agree with the district court's conclusion that the work product privilege does not apply to these documents because they were not prepared in anticipation of litigation. See, e.g., Thompson v. United States, 532 F.2d 734, 738 (10th Cir.1976)
 
 
 [3]
 The Smiths also raise Fifth Amendment self-incrimination claims. In an attempt to avoid the rule that the Fifth Amendment rights of a client are not implicated by the compelled production of documents held by an attorney, see Fisher v. United States, 425 U.S. 391, 402, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976), the Smiths argue that they have been in constructive possession of the documents at issue. This argument was never presented to the district court and we decline to consider it on appeal