**In re GRAND JURY SUBPOENAS.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Scott M. ANDERSON, James G. Walker, John Echols, Tex McConathy, and Stanley Moore, Defendants–Appellants–Relators.**

**No. 89–5199.**

United States Court of Appeals, Tenth Circuit.

July 2, 1990.

---

their fees incurred during their representation of four defendants on drug charges.

## I. Facts

Beginning in approximately April of 1989 the grand jury in the Northern District of Oklahoma began investigating James Coltharp and the organization he controlled under a suspicion of connection with illegal drug activity. Mr. Coltharp allegedly employed a "crew" to assist him in his drug efforts. Relators represented four defendants, who were allegedly crew members in the Coltharp organization, on drug charges in the Eastern District of Oklahoma. The grand jury sought fee information from the relators under a suspicion that Mr. Coltharp may have paid the legal fees for his alleged crew members.

On October 5, 1989, the grand jury issued subpoenas to the relators. The relators' clients had been convicted at trial and at least two of the relators had filed appeals for their clients. Each of the relators filed motions to quash the subpoenas which were finally denied on November 21, 1989. The trial court ordered the relators to appear and testify before the grand jury on December 5, 1989.

On December 5, 1989, the relators appeared before the grand jury as the trial court had ordered. However, each relator refused to testify or to provide any of the documents requested in the subpoena. The trial court held each of the relators in contempt for their refusal to comply with the subpoenas and had them immediately incarcerated. Relators filed an emergency Motion to Stay Proceedings in this court. Later that same day we granted the stay and released each of the relators on their own recognizance.

Our issuance of the stay allowed us to hear oral argument on the appeal of this case a few days thereafter. Relators now challenge the contempt holding on several grounds. Relators claim that the fee information sought by the grand jury is subject to the attorney-client privilege, infringes on the sixth amendment rights of their clients, and should not be disclosed because the government failed to make the necessary

Bruce Anton, Dallas, Tex., for defendants-appellants-relators.

John S. Morgan, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), N.D. Okl., Tulsa, Okl., for plaintiff-appellee.

D. Gregory Bledsoe and Laura E. Frossard, Tulsa, Okl., on the brief, for amicus curiae, American Civil Liberties Union of Oklahoma.

Michael L. Bender, Denver, Colo., on the brief, for amicus curiae, Nat. Ass'n of Criminal Defense Lawyers.

Before McKAY, SEYMOUR, and TACHA, Circuit Judges.

McKAY, Circuit Judge.

This case involves an emergency appeal by several attorneys who were held in contempt and placed in jail because they refused to reveal the source of payment of

showing of need. In addition, relators claim that the trial court's proceedings leading up to the contempt holding violated their due process rights and that the trial court improperly denied bail pending appeal. We will consider each of these arguments in turn.

## II. Standard of Review

We review the district court's findings of fact under the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a); *see also United States v. Recalde,* 761 F.2d 1448, 1457 (10th Cir.1985). We review the district court's finding of contempt under an abuse of discretion standard.

> Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the "abuse of discretion" standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986). However, in order to weigh the district court's exercise of its discretion, we must resolve several purely legal questions which we review de novo. Thus, we apply our own independent judgment to the legal questions raised by this appeal. *See Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

## III. Attorney–Client Privilege

██ It is well recognized in every circuit, including our own, that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege. *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974); *In re Grand Jury Subpoenas,* 803 F.2d 493, 496–98 (9th Cir.1986); *In re Shargel,* 742 F.2d 61, 62 (2d Cir.1984); *In re Grand Jury Investigation,* 723 F.2d 447, 451 (6th Cir.1983); 84 A.L.R.Fed. 852, 859 (1987). However, some circuit courts have created exceptions to this general rule for unique circumstances. The three major exceptions are known as the legal advice exception, the last link exception, and the confidential communication exception.

### A. Legal Advice Exception

Several circuit courts have created an exception to the general rule that client identity and fee information are not protected by the attorney-client privilege where there is a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought. *United States v. Strahl,* 590 F.2d 10, 11–12 (1st Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *In re Grand Jury Investigation,* 631 F.2d 17, 19 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981), *later questioned by, United States v. Liebman,* 742 F.2d 807 (3d Cir.1984); *In re Special Grand Jury No. 81–1,* 676 F.2d 1005, 1009 (4th Cir. 1982), *vacated when target became a fugitive,* 697 F.2d 112 (4th Cir.1982); *In re Grand Jury Proceedings in Matter of Fine,* 641 F.2d 199, 204 (5th Cir.1981); *In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447, 452 (6th Cir.1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977). Some of these holdings are now of questionable validity, although they have not been overruled. For example, the Ninth Circuit has more recently interpreted this exception to prohibit disclosure of the source of fees only when disclosure of the identity of the client would be in substance a disclosure of a confidential communication in the professional relationship between the client and the attorney. *See In re Grand Jury Subpoenas,* 803 F.2d 493, 497 (9th Cir.1986); *In re Osterhoudt,* 722 F.2d 591, 593 (9th Cir.1983).

We need not decide whether this exception will be adopted in this circuit because it does not apply to this case. In order for the legal advice exception to apply, the person seeking the legal advice must be the client of the attorney involved. In this case, the record before us contains no evidence that relators have made a claim that

the person paying their fees was a client of any kind. At a minimum relators must assert that the fee was paid by a client.

Relators must also assert that the client sought legal advice about the very activity for which the fee information is sought. For example, in *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960), the Ninth Circuit refused to require an attorney to divulge the identity of his client when that client had consulted him regarding improperly paid taxes, and the attorney had forwarded an anonymous check to the Internal Revenue Service. The IRS sought the name of the client to allow further review of the questionable tax returns. Identifying this client would have implicated the client in the very activity for which the client consulted the attorney—income tax problems. *Id.*

The facts of this case dictate that we refuse to adopt the legal advice exception in this case for precisely the same reasons on which the Third Circuit relied in *In re Grand Jury Investigation*, 631 F.2d 17 (3d Cir.1980). "The fact of an attorney-client relationship between [attorney] and [client] has been freely admitted and no contention has been made that disclosure of the fee arrangement would further implicate [client] in the matter for which he consulted [attorney]. Furthermore, it has never been suggested that individuals who may have made payments on [client's] behalf were clients of [attorney]. Therefore, disclosure of the names of any third parties would not disrupt any other attorney-client relationship." *Id.* at 19.

### B. *Last Link Exception*

Relators argue in this court, and in the district court, that this circuit should adopt the last link exception which has been adopted in at least two other circuits. The last link exception was largely formulated by the Fifth Circuit in two cases. *See In re Grand Jury Proceedings*, 680 F.2d 1026 (5th Cir.1982) (*"Pavlick"*), and *In re Grand Jury Proceedings*, 517 F.2d 666 (5th Cir.1975) (*"Jones"*).[1] Partially relying on the *Baird* case, the *Jones* court held that "information, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions." *Jones*, 517 F.2d at 674. This test was further refined in *Pavlick* in which the court stated that it "also recognized [in *Jones*] a limited and narrow exception to the general rule, one that obtains when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *Pavlick*, 680 F.2d at 1027.

Contrary to relators' suggestion in their brief, the last link exception has been explicitly rejected by at least one circuit and implicitly rejected by others. In *In re Grand Jury Investigation*, 723 F.2d 447 (6th Cir.1983), the Sixth Circuit explicitly rejected the last link exception as formulated by the Fifth Circuit.

> Upon careful consideration this Court concludes that, although language exists in *Baird* to support viability of *Pavlick*'s "last link" exception, the exception is simply not grounded upon the preservation of confidential *communications* and hence not justifiable to support the attorney-client privilege. Although the last link exception may promote concepts of fundamental fairness against self-incrimination, these concepts are not proper considerations to invoke the attorney-client privilege. Rather, the focus of the inquiry is whether disclosure of the identity would adversely implicate the confi-

---

1. The test has also been adopted by the Eleventh Circuit. *See In re Grand Jury Proceedings*, 689 F.2d 1351 (11th Cir.1982). However, the Eleventh Circuit has recently interpreted the last link exception to apply only in cases where the disclosure of the client's identity would expose other privileged communications, such as motive or strategy, and when the incriminating

nature of privileged communications has created in the client a reasonable expectation that the information would be kept confidential. *In re Grand Jury Proceedings*, 896 F.2d 1267 (11th Cir.1990). This very recent decision is broadly supportive of the position we adopt on the last link exception.

dentiality of communications. Accordingly, this Court rejects the last link exception as articulated in *Pavlick.*

*Id.* at 453–54 (footnote omitted).

The last link exception has also been implicitly rejected in the Second, Third, and Ninth Circuits. In *In re Shargel,* 742 F.2d 61 (2d Cir.1984), the court found that the purpose of the attorney-client privilege was to enable attorneys to offer informed legal advice by encouraging full disclosure by clients. The court went on to conclude that attorney disclosure of the source of fees did not impair the attorney's ability to render informed legal advice.

> It is, of course, true that payment of another person's legal fees may imply facts about a prior or present relationship with that person. However, an attorney's ability to give informed legal advice is not impaired by a rule allowing disclosure of such payments.... [T]he view of the privilege we adopt thus denies protection to evidence indicating payment of one person's legal fees by another.

*Id.* at 64–65.

The Third Circuit refused to apply the last link exception because the exception went further in sustaining the attorney-client privilege than the court had been willing to accept in the past. *United States v. Liebman,* 742 F.2d 807, 810 n. 2 (3d Cir.1984). The court did not rely on the last link exception because it found that there had been a protected communication. *Id.*

The Ninth Circuit implicitly rejected the exception when it held that "[f]ee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating." *In re Osterhoudt,* 722 F.2d 591, 593 (9th Cir.1983).

Thus, we recognize a split among the circuits over the adoption of the last link exception. This circuit has not spoken directly to this issue, contrary to the claim by amicus curiae, American Civil Liberties Union, that we adopted the last link exception in *United States v. Hodgson,* 492 F.2d 1175 (10th Cir.1974). In *Hodgson* we merely distinguished the facts of that case from the facts of another case in which the response to a summons would have revealed the identity of an unknown client. *Id.* at 1177. Merely drawing that distinction in that case cannot be construed to explicitly or implicitly adopt the last link exception.

The government argues in its brief that this circuit should reject the last link exception in this case because the clients of relators are not targets of the subpoenas. There has been some confusion throughout these proceedings whether the clients of relators are or are not targets of the grand jury investigation. We think the argument is merely a matter of semantics. The United States Attorney admitted during oral argument that relators' clients could be liable, at least for money laundering, if the information revealed to the grand jury about attorney's fees incriminated the clients. In fact, the government explained that it refused to give immunity to relators' clients precisely because it wanted to preserve the option of charging them with money laundering or other crimes. To suggest that relators' clients are not targets of the grand jury investigation in one breath, while explaining that information revealed to the grand jury may be used against them in the next, approaches intellectual dishonesty. Relators' clients are clearly "targets" of the grand jury investigation if information gathered in that investigation could be used to charge the clients with further crimes. Thus, we decline to follow the government's suggestion that we reject the last link test in this case based only on the fact that the relators' clients are not targets.

■ The last link exception is a very narrow one which is carefully fact based. We need not ultimately decide whether even that narrow exception should apply in this circuit because we are of the view that the facts of this case take it outside the standards of whatever is left of *Jones,* which is the principle precedential base for the exception. Unlike our case, *Jones* involved payment of fees for one client by a

person who was also a client of the same attorney. This is an important distinction. There is at least a stronger arguable basis on which to invoke the attorney-client privilege to protect the identity of an actual client than there is to protect the identity of a third person who may implicate the attorney's actual client in some wrongdoing.

In addition, the most recent Fifth Circuit case clarifying the exception, *Pavlick,* explained the unique fact situation which gave rise to the test and refused to apply it in a case in which the promise of legal services was made as a fringe benefit in recruiting criminal conspirators. The *Pavlick* court explained the *Jones* decision as follows:

> [O]ur decision rested on the peculiar facts of that case and "should not be taken as any indication of how we would decide a similar question if the inculpatory value of sought-after testimony were less obvious or largely attenuated." Among those "peculiar facts" was that the six attorneys drawn before the grand jury in *Jones* represented a generous portion of the criminal law bar of the lower Rio Grande Valley area, and the project was a rather broad attempt to canvass that portion for information detrimental to certain of its clients....

*Pavlick,* 680 F.2d at 1027 (citation omitted).[2] Thus, even the Fifth Circuit has limited the last link exception to the facts of *Jones* which are very different from the facts of this case. *Jones* involved a case in which a large part of the criminal bar in a certain area was subpoenaed to testify before the grand jury. This was merely a broad search for incriminating evidence concerning fee information. In addition, the attorneys in *Jones* claimed that the fees were paid by an individual which they were currently representing professionally. In fact, the *Jones* court based its decision on the fact that the attorneys were called "for the purpose of incriminating their undisclosed clients." *Jones,* 517 F.2d at 672.

The facts of the present case are different from *Jones* in three important respects. First, a large portion of the criminal bar in a specific area was not subpoenaed and the information sought was specific and aimed at a specified third party. Second, relators do not claim that their clients' fees were paid by another of their clients. Finally, relators seek to assert the privilege for their known clients whose fees were paid. Relators have never claimed that they were asserting the privilege to protect the undisclosed source of the fees, as in the *Jones* case. Given these factual differences, we do not believe the Fifth Circuit would apply the last link exception in this case. We too reject its application on these facts.

We wish to clarify, however, that we do not reject what we consider to be the underlying principle supporting the last link exception. We believe that the Fifth Circuit's articulation of the "last link" exception fails adequately to discipline the thinking of lawyers and courts on this issue. The last link exception ultimately stems from *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960), even in the Fifth Circuit. Relying on *Baird,* several circuit courts have backed away from both the legal advice and last link exceptions. These courts have carefully applied the facts and holding of *Baird* to create what is known as the confidential communication exception. The confidential communication exception holds that an exception to the general rule that a client's identity is not privileged exists in the situation where the disclosure of the client's identity would be tantamount to disclosing an otherwise protected confidential communication. *See United States v. Strahl,* 590 F.2d 10, 11–12 (1st Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *In re Shargel,* 742 F.2d 61, 62–63 (2d Cir.1984); *United States v. Liebman,* 742 F.2d 807, 809 (3d Cir.1984); *NLRB v. Harvey,* 349 F.2d 900, 905 (4th Cir.1965); *In re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447, 452–54 (6th Cir.

---

**2.** The Eleventh Circuit has also recently clarified the last link exception, limiting its application to cases in which the disclosure of the client's identity would result in disclosure of other privileged communications such as motive or strategy. *In re Grand Jury Proceedings,* 896 F.2d 1267 (11th Cir.1990). This holding is consistent with our resolution of this case.

**1492**

1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *In re Witnesses Before the Special Mar.1980 Grand Jury,* 729 F.2d 489, 492–94 (7th Cir.1984); *In re Osterhoudt,* 722 F.2d 591, 593–94 (9th Cir.1983); *In re Grand Jury Proceedings,* 896 F.2d 1267, 1271–73 (11th Cir. 1990). We believe that the confidential communication exception represents a more disciplined interpretation of *Baird* than does the Fifth Circuit's last link exception. Thus, we reject the last link exception to the extent it has deviated from the holding of *Baird.*

We agree that a disciplined exception to the attorney client privilege must mirror the facts and analysis of *Baird.* In *Baird* the mere identification of the client would have disclosed the confidential communication from the client that he had committed the crime for which he sought advice. The client in *Baird* sought advice strictly concerning the case then under investigation. We hold that in order to invoke the attorney client privilege under similar facts in this Circuit, the advice sought must have been *Baird*-like. In other words, the advice sought must have concerned the case then under investigation and disclosure of the client's identity would now be, in substance, the disclosure of a confidential communication by the client, such as establishing the identity of the client as the perpetrator of the alleged crime at issue. This case does not involve any claim that the source of the fees was a client who sought advice on any subject. Nor is there any claim that advice was given concerning the case now under investigation. Given these facts, disclosure of the source of the fees would not disclose any confidential communication from client to attorney.

■■■ The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client. *In re Grand Jury Investigation,* 723 F.2d 447, 453–54 (6th Cir.1983); *In re Osterhoudt,* 722 F.2d 591, 593 (9th Cir. 1983); *In re Shargel,* 742 F.2d 61, 64–65

(2d Cir.1984). Information regarding the fee arrangement is not normally part of the professional consultation and therefore it is not privileged even if it would incriminate the client in wrongdoing. *In re Osterhoudt,* 722 F.2d at 593. In other words, while payment of a fee to an attorney is necessary to obtain legal advice, disclosure of the fee arrangement does not inhibit the normal communications necessary for the attorney to act effectively in representing the client. *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247–48 (2d Cir.1985). Absent one of those rare circumstances in which the payment of the fee itself is unlawful or where an actual client paid the fee and sought advice concerning the actual case under investigation as in *Baird,* we hold that fee arrangements are not protected by the attorney-client privilege.

In this case the subpoenas requested seven pieces of information from the relators. The subpoenas asked for the identity of the source of the fees, the amount of the fees, the manner of payment, the date of payment, the name of any others partially responsible for payment of the fee, and whether any part of the fee came from the client or his family.[3] The subpoena also requested all documents relating to the payment or acceptance of the fees, including checks, cashier's checks, deposit slips, receipts, wire transfers, fee contracts, and IRS form 8300's. We hold that none of these requests is protected by the attorney-client privilege and thus must be disclosed, with one exception.

■■■ We believe that disclosing the actual fee contracts has the potential for revealing confidential information along with unprotected fee information. Thus, we remand this issue to the district court for its determination of whether, in light of this opinion, the fee contracts contain any confidential communications that are protected by the attorney-client privilege. *See In re Witnesses Before Special March 1980 Grand Jury,* 729 F.2d 489, 495 (7th Cir.

---

**3.** There is no attorney-client privilege between an attorney and a member of the client's family. Thus, the attorney-client privilege does not pro-

hibit the government from asking if a family member paid part of the client's fee.

1984) (remanding to district court for determination of whether attorney-client privilege protected disclosure of billing sheets or time sheets); *In re Grand Jury Witnesses*, 695 F.2d 359, 362–63 (9th Cir.1982) ("*Salas*") (remanding to district court for determination of whether fee contract contained communications protected by attorney-client privilege). The decision whether to review the fee contracts *in camera* is within the discretion of the trial court. *See In re Grand Jury Proceedings*, 723 F.2d 1461, 1467 (10th Cir.1983), *cert. denied*, 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984) ("*Vargas*"). However, we believe that *in camera* review is appropriate in this case. *See In re Slaughter*, 694 F.2d 1258, 1260 n. 2 (11th Cir.1982) (referring to *in camera* review of possibly privileged documents in context of request for information relating to attorneys' fees). Nevertheless, the subpoena, with the exception noted, does not request privileged information.

## IV. Sixth Amendment Right to Counsel

■ Relators' second challenge to the subpoenas is difficult to glean from their brief. However, amici curiae clearly raise the issue of a violation of relators' clients' rights to counsel.[4] Relators challenge the subpoenas on the ground that they create a conflict of interest between relators and their clients. Relators argue that they will be forced to testify against their client's interests or possibly be forced to withdraw from representation of their clients. Relators claim that each of these possibilities interferes with their clients' rights to freely chosen and effective assistance of counsel.

No Tenth Circuit case has considered the precise issue of right to counsel in the context of a grand jury request for fee information. However, substantial guidance can be found in other circuits that have faced very similar issues.

Several circuits have held that no right to counsel attaches prior to indictment. "At the pre-indictment stage, appellant's Sixth Amendment rights have not attached." *In re Grand Jury Subpoena Served Upon*

4. Hereafter, we attribute the arguments made

*Doe*, 781 F.2d 238, 243 (2d Cir.1985). *See also In re Klein*, 776 F.2d 628, 634 (7th Cir.1985). In addition, the Fourth Circuit has held that a subpoena can be served after the completion of a criminal case. *See United States v. (Under Seal)*, 774 F.2d 624, 628 (4th Cir.1985). *Under Seal* does not discuss the possibility of appeal, but the subpoena was served several years after the criminal case was decided and presumably all appeals were exhausted or expired. We agree with these circuits that no sixth amendment rights attach prior to indictment or after all appeals have been exhausted.

After indictment and during actual representation—when sixth amendment rights have attached—the courts agree that a case-by-case analysis of prejudice should be undertaken. In the most recent case, *United States v. Perry*, 857 F.2d 1346 (9th Cir.1988), the court upheld the issuance of a subpoena after an indictment had been made because the subpoena presented only the potential for attorney-client conflict which might violate the sixth amendment. The *Perry* court explained that:

[O]ur decision is guided by our confidence that the potential for prejudice is not "so likely that case-by-case inquiry into prejudice is not worth the cost."

. . . .

As the facts of this case illustrate, there will be many situations where an attorney's compliance with the subpoena will not require disqualification.

*Id.* at 1350.

The Second Circuit has followed a similar rule.

Assessment of whether the subpoena is unreasonable or burdensome, especially when sought to be enforced against counsel for an indicted defendant, can be determined under the standards of Rule 17(c), informed by Sixth Amendment considerations. The risk of disqualification should remain for determination at an *in limine* hearing by the trial judge who must weigh the probative value of the information the government seeks

by amici curiae to relators.

**1494**

against the loss of counsel of the accused's choice.

*In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 250 (2d Cir.1985) ("*Doe*").

The only time any of the circuits have been willing to quash a subpoena on sixth amendment grounds is when the timing of the subpoena amounted to harassment or interference with trial preparation. In *In re Grand Jury Matters*, 751 F.2d 13 (1st Cir.1984), a subpoena was issued right before trial in circumstances arguably for purposes of intimidating the attorneys and interrupting their preparation for trial. The court held that "[t]he district court could weigh those policies and conclude that the potential disruption of the attorneys' relationships with their clients at this crucial period in their preparation of their clients' defense made the subpoenas unreasonable and oppressive at the time they were served." *Id.* at 18. However, the First Circuit went on to point out that:

> There can be no absolute rule that frees an attorney, merely because he is such, to refuse to give unprivileged evidence to a grand jury. Even when trials are pending, the grand jury's right to unprivileged evidence may outweigh the right of the defense bar and its clients not to be disturbed. The matter is one that turns on particular facts as evaluated by a district court.

*Id.* at 19. The Second Circuit also interprets the sixth amendment to include protection from harassing subpoenas. "[T]he Sixth Amendment assures [defendant] the

right to be free of unduly burdensome interruption of his counsel's trial preparation...." *Doe*, 781 F.2d at 250.

According to the record before us, relator's clients are not now under indictment for any crimes that are under investigation by the Grand Jury. However, the right to counsel implicated in this case involves the clients' rights to have relators represent them on appeal. Relators' clients are clearly under indictment—they have actually been convicted—for the crimes now on appeal. We also believe that representation on appeal is very similar to representation at trial and thus, the clients' right to counsel has attached.[5]

We are persuaded that the test adopted by other circuits for cases currently pending should also be applied to the right to counsel on appeal. Thus, we hold that a subpoena served upon counsel during representation of a client whose case is currently on appeal should be quashed only upon a showing that the subpoena would create actual conflict between the attorney and client. The determination of actual conflict should be made on a case-by-case basis. We agree with the Seventh Circuit that disqualification is not the most likely result of the subpoena.

> Why would the disclosure of unprivileged documents lead to the lawyer's disqualification? It might, if the Government called the lawyer at trial, but this is not the most likely consequence of the attorney's appearance before the grand jury.... We are loath to establish re-

---

5. We hold that relators' clients do have a right to counsel on appeal even though the source of this right may not be the sixth amendment. Two prominent criminal commentators have concluded that there is a right to counsel for cases on appeal, although they believe it is not grounded in the sixth amendment.

> Although they were speaking to due process and equal protection claims, *Douglas v. California*, [372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)], and *Ross v. Moffitt*, [417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)], certainly suggest that the defense appeal from a conviction is not part of the criminal prosecution. Thus, *Ross* spoke of the appeal as involving a shift in the function of the process that would seem to mark the end of the Sixth Amendment guarantee.

2 W. LaFave & J. Israel, *Criminal Procedure* § 11.2(b) at 21 (1984). However, equal protection and due process rights create a right to counsel during appeal that *is identical to* the sixth amendment right. *Douglas*, 372 U.S. 353, 83 S.Ct. at 814, relied on equal protection grounds to find a constitutional right to appointed counsel on a first appeal provided as a matter of right. *See also, Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Thus, there is a right to "effective assistance that apparently extends to all proceedings for which there would be a right to appointed counsel under either the Sixth Amendment, due process, or some other constitutional provision." 2 LaFave & Israel, § 11.7(a), at 63.

quirements going beyond the privilege on the off chance that they might prevent occasional disqualifications.

*In re Klein,* 776 F.2d at 633 (footnote omitted). This is particularly true where trial is over and the only potential for the attorney to become a witness against his client is in the event a new trial is ordered. That eventuality is even more remote than in those cases where the subpoena has been upheld while the representation was still at the evidentiary (trial) stage.

The record in this case is devoid of evidence that would establish an actual conflict between relators and their clients even if the fee information were disclosed. It is not clear that relators would ever be required to testify against their clients or that the information would be incriminating. Without a showing of actual conflict in the pending representation, we hold that the subpoenas do not violate the clients' rights to effective assistance of counsel.

In the absence of actual conflict, we hold that the subpoena must be quashed only if the subpoena itself is somehow harassing or interferes with counsel's preparation for trial. Relators present no evidence that their preparation for the appeals has suffered as a result of the subpoenas. We therefore conclude that the subpoenas were not harassing and should be upheld.

## V. Government Duty to Show Need and Lack of Other Source

Relators claim that the government has the duty to show a need for the information requested by the subpoenas and to show a lack of any other source from which to obtain the information. Relators base this argument on two different grounds, although they are treated as one in all briefs. First, relators and amicus curiae, American Civil Liberties Union, claim that this circuit has adopted the requirement of a preliminary showing of need by the government. Second, they claim that the government failed to follow Department of Justice Guidelines. We treat these two arguments separately.

■ Relators claim that our decision in *In re Grand Jury Subpoena Duces Te-*

*cum,* 697 F.2d 277 (10th Cir.1983) (*"Dorokee"*) requires the government to show both a need for the information and a lack of any other source for it prior to issuing subpoenas to attorneys. *Dorokee* actually holds that the government must make some minimum showing of a proper purpose and relevance to a proper grand jury investigation before subpoenas to attorneys can be issued. *Id.* at 281. In *Dorokee,* we went on to hold that this showing could be made by use of sworn testimony or affidavit. *Id.* Relators make much of the fact that in *Dorokee* we cited a Third Circuit case, *In re Grand Jury Proceedings,* 486 F.2d 85 (3d Cir.1973) (*"Schofield"*) to support our holding. Relators claim that *Schofield* holds that the government must make some preliminary showing of need. However, we believe that relators miss the point of both *Dorokee* and *Schofield.*

*Schofield* held that the government must show that evidence requested by a subpoena will have some relevance to a legitimate grand jury investigation. In *Schofield,* the court required the government to show how a requested handwriting sample, fingerprints, and photo of the subpoenaed individual would be used to further a proper grand jury investigation. *See Schofield,* 486 F.2d at 93. In other words, the court required the government to make some minimal explanation to the subpoenaed individual as to why they were requesting the information. *Dorokee* and *Schofield* did not create a requirement for a showing of need or lack of other source by the government. Instead, these cases simply require the government to provide notice to the subpoenaed witness showing that the information is relevant to a legitimate grand jury investigation.

In this case, relators clearly had prior notice of the relationship of the subpoenaed information to a legitimate grand jury investigation. Relators knew that a legitimate investigation of Mr. Coltharp was being conducted long before any subpoenas were issued. Relators were made aware during their clients' trial that fee information regarding their clients would be need-

ed and would be used to show a continuing criminal enterprise by Mr. Coltharp. Relators received letters from the government requesting fee information and were told by other government agents during the trial of their clients exactly why the information was needed. During the fight over the subpoenas, relators offered newspaper articles and played a video tape of the government attorney explaining how the requested information would be used. In addition, government counsel made explicit statements—on the record—during these proceedings explaining the "relevance" of the requested fee information. Thus, we conclude that relators had sufficient notice of the purpose for which the information was to be used and the legitimacy of the grand jury investigation regarding Mr. Coltharp.

We also note that in *Dorokee* we adopted the requirements set out in *United States v. Gurule*, 437 F.2d 239, 241 (10th Cir. 1970), for the minimum showing of relevancy in cases in which no privilege is shown. "A grand jury subpoena is not unreasonable under the Fourth Amendment if it: (1) commands the production only of things relevant to the investigation; (2) specifies the items with reasonable particularity; and (3) covers only a reasonable period of time." *Dorokee*, 697 F.2d at 281. We hold that the fee information requested in this case is relevant to the grand jury investigation and that the subpoenas are both precise and cover a limited time period. Because we held earlier that no privilege exists for this information, the subpoenas must be upheld under the *Gurule* requirements.

Our holdings that relators had sufficient notice of the relevance of the subpoenaed information and that the government made a satisfactory showing of relevance under *Gurule* require us to hold further that the government is not required to make any further showing of need or lack of another source for the subpoenaed information. This holding puts us into agreement with every other circuit that has addressed this issue. No circuit court has found a right to force the government to show a need or lack of another source for the information.

*See Doe*, 781 F.2d at 243–49; *Klein*, 776 F.2d at 632–33; *Schofield*, 721 F.2d 1221, 1222–23 (9th Cir.1983); *In re Grand Jury Proceedings*, 708 F.2d 1571, 1575 (11th Cir. 1983) *("Freeman")*.

■ We now address the relators' second argument that the Department of Justice Guidelines require the government to attempt to secure the information from alternative sources prior to issuing attorney subpoenas. Relators claim that the requested fee information is available from many other sources. We need not resolve the issue of alternative sources because we hold that the Department of Justice Guidelines create no rights in favor of grand jury witnesses. *See United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (holding that agent's violation of IRS regulations did not mandate exclusion of evidence obtained as a result of violation). We agree with the Seventh Circuit's holding that a violation of the Guidelines creates no cause of action based on the subpoenas and does not affect their validity.

> The subpoena issues from the grand jury and is enforced by a court; it does not draw its force from the will of the Department of Justice. Guidelines of this sort are similar to guidelines about the exercise of prosecutorial discretion. They may enable the Department to control those in the field, but once an agent of the Department acts, the legal status of that act depends on other rules of law.

*In re Klein*, 776 F.2d at 635.

### VI. Due Process Challenges

Relators make several due process challenges to the procedures used to find relators in contempt. These challenges can be grouped into three general categories. First, relators claim that they did not receive adequate notice of the charges against them. Second, they assert that they had inadequate time to prepare for the contempt hearing and that the hearing was inadequate. Finally, they claim that their ethical duty not to disclose confidential information conflicts with the court's order to testify.

## A. *Inadequate Notice*

■ Federal Rule of Criminal Procedure 42(b) requires that the notice of criminal contempt shall state "the essential facts constituting the criminal contempt charged and describe it as such." Fed.R.Crim.P. 42(b). Relators claim that the notice given in this case was not sufficient under Rule 42(b). We note, however, that each application stated that a subpoena had been served requiring the relator to testify before the grand jury. The application went on to explain the procedural posture of the case.

> [P]revious hereto said subpoena was challenged by a motion to quash which was denied and the said [relator] was recognized back to December 5, 1989, and directed to answer the questions and provide the information pertaining to such subpoena. That on said date and at said time, [relator], intentionally, refused and failed to answer such questions before the Grand Jury after being sworn by the foreman thereof.

Application for Finding of Contempt, December 5, 1989. We hold that this information clearly outlines the essential facts of the contempt charge and thus provides adequate notice to relators in accordance with Rule 42(b).

## B. *Inadequate Time for Preparation and Inadequate Hearing*

■ Relators claim that they were given only thirty minutes to prepare for the contempt hearing from the time they were found in contempt. They also claim that the hearing was inadequate in that the trial court refused to hear evidence on all of the issues presented. Federal Rule of Criminal Procedure 42(b) requires a reasonable time for the preparation of the defense in a contempt hearing. *See* Fed.R.Crim.P. 42(b). Relators also point out that reasonable time for preparation is the law in this circuit. *In re Grand Jury*, 524 F.2d 209, 218–19 (10th Cir.1975) ("*Vigil*"). Relators correctly assert that *Vigil* provides the law of this circuit. However, the facts of *Vigil* indicate that relators' position is not well taken.

In *Vigil* a subpoena was served on July 22, 1975. A motion to quash was filed on August 18, 1975, and denied during an 8:00 a.m. hearing on August 19, 1975. At 1:30 p.m. on August 19, 1975 the trial court granted the witness immunity and held another hearing at 4:30 p.m., stating that the witness was probably in contempt but that the court would allow her another chance to testify on August 22, 1975. When the witness refused to testify on the morning of August 22, 1975, the trial court held her in contempt at 11:00 a.m. We held that " '[r]easonable time' varies with each case, and the time allowed in the instant case was in our view reasonable under the circumstances." *Vigil*, 524 F.2d at 219. We concluded that the trial court had given the witness reasonable time to prepare for the contempt hearing because she had been warned that she might be in contempt and "[t]his is particularly so, in view of the fact that most of the matters relied on as constituting just cause had been considered and ruled on by the trial court in its early morning court session on August 19, 1975." *Id.*

*Vigil* is controlling in this case. Here, the subpoenas were issued on October 5, 1989, and served on November 1, 1989. Two hearings on the motions to quash were held on November 7, 1989 and November 21, 1989. All arguments challenging the validity of the subpoenas were rejected by the trial court at these hearings. The relators were then ordered to testify on December 5, 1989. When they refused to testify on December 5, 1989, the relators were found in contempt. We held in *Vigil* that where most of the matters relied on to challenge a contempt finding had previously been ruled on by the trial court three days prior to the contempt hearing, adequate time to prepare a defense had been allowed. Here relators had sufficient time and an adequate hearing at both the November 7 and November 21 hearings. Relators were given "due process" in regard to each of the issues litigated on those days. *Vigil* teaches us that issues which have been litigated prior to the contempt hearing do not require further review in the contempt hearing itself, and thus do

not require adequate time to prepare for those issues.

Relators attempted to raise two new issues at the contempt hearing that had not been raised in the prior hearings on the motions to quash. First, relators explained that there was some confusion over whether their clients were in fact targets of the grand jury investigation. Relators claimed that the determination of this fact changed the entire nature of the proceeding by creating the possibility of immunity. We find this argument unpersuasive and hold that the trial court correctly dealt with the issue summarily. As we held earlier in this opinion, relators' clients have always been targets of the investigation, in the sense that any information collected by the grand jury could be used against them in later proceedings. Thus, relators' clients were not obviously entitled to immunity and the controversy over the semantics of "target" has no merit. Moreover, the United States attorney consistently refused to grant immunity to relators' clients, further indicating the weakness of relators' argument that immunity was a possibility. Finally, the status of relators' clients as targets or nontargets is irrelevant, notwithstanding the possibility of immunity, to the question addressed in the contempt hearing—disobedience to a court order to testify. Consequently, we hold that this issue did not require more time to prepare than was given.

Relators also claimed at the contempt hearing that they needed to have access to all of the information then available to the grand jury in order to know whether to assert their fifth amendment privileges against self-incrimination. We reject this contention. Relators' statements may tend to incriminate them in wrongdoing or they may not, regardless of the other evidence available to the grand jury. In addition, this is one area in which the government has steadfastly maintained that relators are not targets of the investigation. Relators never actually claimed their fifth amendment rights in refusing to testify. Therefore, the only issue before us is whether they have a right to further information in order to decide whether to claim their fifth amendment privilege. We hold that relators have no right to further information.

We are satisfied that relators received due process in the entire contempt adjudication. Two hearings were held to adjudicate the only substantial arguments presented by relators challenging the validity of the subpoenas. No new substantial issues necessitating a hearing were raised at the contempt hearing. Finally, we note that counsel was obviously prepared for the eventuality of an actual contempt holding. Counsel's preparedness was evidenced by the fact that counsel filed a written notice of appeal during the hearing on contempt. Counsel was clearly aware of the possibility of a contempt holding which is the purpose of the notice requirement.

### C. Conflicts with Ethical Duty not to Disclose

██ Relators also claim that the order to comply with the subpoenas violates their ethical duty not to "reveal information relating to representation of a client unless the client consents after consultation." Oklahoma Rule of Professional Conduct 1.6(a). We held in this opinion that the fee information is not privileged and would not interfere with the right to counsel. Thus, relators can only claim that this information is subject to the ethical duty of confidentiality of rule 1.6. We now hold that this information is not subject to the ethical duty of confidentiality.

Rule 1.6(c) states that: "A lawyer shall reveal such [confidential] information when required by law or court order." This language negates the entire duty of confidentiality under the facts of this case—when a court orders a lawyer to testify. Thus, we reject relators' claim that the subpoena violates the duty of confidentiality.

### VII.   Punitive Sentence

Relators claim that the trial court violated its discretion by imposing the maximum possible sentence allowed and by not grant-

ing relators bail during appeal. We deal with each challenge separately.

■ First, we hold that the trial court's "maximum" sentence was not an abuse of discretion. Such a sentence is typical in contempt cases in order to coerce compliance with the court's order to testify. 28 U.S.C. § 1826 (1982) specifically provides for confinement intended to coerce testimony for no longer than the term of the grand jury. *See id.* This is precisely what the trial court ordered, and we do not hold that it was an abuse of discretion. In addition, this is not a case where the trial judge refused to give the defendants the time or opportunity to purge themselves. Relators made it clear that they would not comply with the trial judge's order.

We hold that relators' bail argument is moot. We granted bail to relators pending our resolution of this appeal.

### VIII. Conclusion

We conclude that the attorney fee information in this case (with the exception of actual fee contracts) is not subject to the attorney-client privilege, and its disclosure does not violate relators' clients' rights to counsel. We remand to the district court the issue of whether the fee contracts contain protected information. We hold that the government is under no obligation to make a preliminary showing of need or lack of other source in order to subpoena attorney fee information. We also hold that the procedures used in this case did not violate due process and that the sentence imposed was not an abuse of discretion.

The decision of the district court is AFFIRMED except to the extent that it requires the disclosure of the fee contracts themselves. The fee contracts issue is REMANDED to the district court.